No. 2023-1687

# United States Court of Appeals for the Federal Circuit

MITEK SYSTEMS, INC.,
*Plaintiff-Appellant,*

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION,
*Defendant-Appellee,*

Appeal from the United States District Court for the Eastern District of Texas
Case No. 2:20-cv-00115-JRG

Judge Rodney Gilstrap

## CORRECTED NONCONFIDENTIAL RESPONSE BRIEF OF DEFENDANT-APPELLEE UNITED SERVICES AUTOMOBILE ASSOCIATION

JASON G. SHEASBY
MICHAEL D. HARBOUR
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90667-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

LISA S. GLASSER
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California
92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Counsel for Defendant-Appellee,*
*United Services Automobile Association*

# EXEMPLARY CLAIMS

**U.S. Patent No. 8,699,779 – Claim 1**

**1.** A system for depositing a check, comprising:

A mobile device having a camera, a display and a processor, wherein the processor is configured to:

project an alignment guide in the display of the mobile device, the display of the mobile device displaying a field of view of the camera;

monitor an image of the check that is within the field of view;

determine whether the image of the check aligns with the alignment guide;

automatically capture the image of the check when the image of the check is determined to align with the alignment guide; and

transmit the captured image of the check from the cam era to a depository via a communication pathway between the mobile device and the depository.

**U.S. Patent No. 9,818,090 – Claim 1**

**1.** A system comprising:

an image capture device;

a presentation device; and

a processor in communication with the image capture device and the presentation device, the processor configured to:

monitor a target document in a field of view of the image capture device with respect to a monitoring criterion;

control the presentation device to present feedback information describing an instruction for satisfying the monitoring criterion;

determine whether the monitoring criterion is satisfied based on the target document in the field of view of the image capture device; and

when the monitoring criterion is determined to be satisfied, control the image capture device to capture an image depicting the target document in the field of view of the image capture device.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1687

**Short Case Caption** Mitek Systems v. United Services Automobile Association

**Filing Party/Entity** United Services Automobile Association

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/14/2023

Signature: /s/ Michael D. Harbour

Name: Michael D. Harbour

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| United Services Automobile Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Parker Bunt & Ainsworth | | |
| Robert Chirstopher Bunt | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**


INTRODUCTION .................................................................................... 1

STATEMENT OF THE CASE .................................................................... 2

I. The Parties .............................................................................. 2

II. USAA v. Wells Fargo .................................................................. 3

III. Mitek's Declaratory Judgment Complaint ........................................ 5

IV. Prior Appeal And Remand ........................................................... 6

SUMMARY OF ARGUMENT ..................................................................... 7

STANDARD OF REVIEW ........................................................................ 11

ARGUMENT ......................................................................................... 12

I. The District Court Correctly Dismissed Mitek's Suit For Lack Of Subject Matter Jurisdiction ............................................... 12

A. Mitek Did Not Establish Reasonable Potential Of Suit For Infringement ............................................................. 12

1. Mitek Expressly Represented To The PTAB That USAA Never Accused It Of Infringement And Its Software Does Not Address All Claim Elements .................. 14

2. Mitek Did Not Establish Reasonable Potential Of Suit For Direct Infringement ....................................................... 16

3. Mitek Did Not Establish Reasonable Potential Of Suit For Indirect Infringement ..................................................... 21

4. The History Of USAA's Enforcement Efforts Confirm The Absence Of Jurisdiction ................................................. 31

B. A Indemnification Request From An Entitiy That USAA Never Contacted Does Not Create Jurisdiction ......... 36

1. Mitek Had Not Received Any Potentially Meritorious Indemnification Demands At The Time Of Its Complaint .......... 37

2. Post-Complaint Indemnification Demands Do Not Establish Jurisdiction .......... 40

3. Post-Complaint Events Confirm That Mitek Is Not Obligated to Indemnify Any Bank That USAA Has Sued For Infringement .......... 43

C. The District Court Applied The Correct Standard .......... 44

II. The District Court Did Not Abuse Its Discretion By Determining, As An Alternative Basis, That It Is Appropriate To Decline Jurisdiction .......... 46

1. The Proposed Declaratory Judgment Action Would Be Extremely Unwieldy And Inefficient .......... 48

2. Mitek's Proposed Declaratory Judgment Action Would Not Resolve Any Dispute Between USAA and Other Banks .......... 52

3. Mitek Could Have Intervened And Failed To Do So .......... 55

4. Mitek's Suit Was Brought For An Improper Purpose .......... 57

**CONFIDENTIAL MATERIAL OMITTED**

The material omitted on pages 4, 43, 45 describes information that was designated by a Wells Fargo as confidential in prior litigation; the material omitted on pages 10 and 38-42 describes the contents of confidential agreements between Mitek and a third parties, which Mitek claims is confidential and has been filed under seal.

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AbbVie Inc. v. MedImmune Ltd.*,
881 F.3d 1334 (Fed. Cir. 2018) ....................................................................50

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
692 F.3d 1301 (Fed. Cir. 2012) ....................................................................28

*Allied Min. Prod., Inc. v. Osmi, Inc.*,
870 F.3d 1337 (Fed. Cir. 2017) ....................................................................33

*Arris Grp., Inc. v. British Telecomms. PLC,*
639 F.3d 1368 (Fed. Cir. 2011) ....................................................30, 31, 35, 36

*AVC v. Asetek Danmark,*
837 F.3d 1249 (Fed. Cir. 2016) ..............................................................20, 34

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ....................................................25, 26, 27, 30

*BP Chemicals Ltd. v. Union Carbide Corp.*,
4 F.3d 975 (Fed. Cir. 1993) .........................................................35, 38, 42, 52

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) ....................................................................44

C*apo, Inc. v. Dioptics Med. Prod., Inc.*,
387 F.3d 1352 (Fed. Cir. 2004) ....................................................................20

*Cisco Sys., Inc. v. Alberta Telecommunications Rsch. Ctr.*,
538 F. App'x 894 (Fed. Cir. 2013) ................................................................27

*City of Alexandria v. Brown*,
740 F.3d 339 (5th Cir. 2014) ........................................................................44

*Commc'ns Test Design, Inc. v. Contec, LLC,*
952 F.3d 1356 (Fed. Cir. 2020) ....................................................................12

*Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) .....50

*In re EMC Corp.*,
677 F.3d 1351 (Fed. Cir. 2012) .....50

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996) .....57

*Ferreiro v. United States*,
350 F.3d 1318 (Fed. Cir. 2003) .....11

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) .....18

*Ford Motor Co. v. United States*,
811 F.3d 1371 (Fed. Cir. 2016) .....55

*Grupo Dataflux v. Atlas Global Grp., L.P.*,
541 U.S. 567 (2004), and (2) .....12, 37

*Honeywell Int'l, Inc. v. United States*,
609 F.3d 1292 (Fed. Cir. 2010) .....54

*Hunt v. Cromartie*,
526 U.S. 541 (1999).....46

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) .....27

*Inguran, LLC v. ABS Glob., Inc.*,
72 F.4th 1272 (Fed. Cir. 2023) .....53

*JVC Kenwood Corp. v. Nero, Inc.*,
797 F.3d 1039 (Fed. Cir. 2015) .....54

*Ladd v. United States*,
713 F.3d 648 (Fed. Cir. 2013) .....20

*Lewis v. Knutson*,
699 F.2d 230 (5th Cir. 1983) .....12

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014)........................................................................................48

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ......................................................................52

*Marshall v. Kimberly-Clark Corp.*,
625 F.2d 1300 (5th Cir. 1980) ........................................................................46

*U.S. ex rel. Mathews v. HealthSouth Corp.*,
332 F.3d 293 (5th Cir. 2003) ..........................................................................18

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
695 F.3d 1322 (Fed. Cir. 2012) ........................................................13, 40, 41, 43

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)........................................................................................12

*MercExchange, LLC v. eBay, Inc.*,
401 F.3d 1323 (Fed. Cir. 2005) *vacated on other grounds*, 547
U.S. 388 (2006)...............................................................................................28

*Microchip Tech. Inc. v. Chamberlain Grp., Inc.*,
441 F.3d 936 (Fed. Cir. 2006) ........................................................................34

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014) ...................................................................*passim*

*Microsoft Corp. v. GeoTag, Inc.*,
817 F.3d 1305 (Fed. Cir. 2016) ......................................................................16

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*,
303 F.3d 1294 (Fed. Cir. 2002) ......................................................................49

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
34 F.4th 1334 (Fed. Cir. 2022) (*Mitek I*) ...................................................*passim*

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
No. 19-CV-07223, 2020 WL 1922635 (N.D. Cal. Apr. 21, 2020),
*aff'd*, 34 F.4th 1334 (Fed. Cir. 2022).............................................................6, 58

*Mitek Systems, Inc. v. United Services Automobile Association*,
No. 2021-1989 ................................................................................................ xiii

*New Orleans Pub. Serv., Inc. v. Majoue*,
802 F.2d 166 (5th Cir. 1986) ....................59

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008) ....................13, 19, 21, 34

*In re S. Recycling, L.L.C.*,
982 F.3d 374 (5th Cir. 2020) ....................12

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) ....................19

*Shockley v. Arcan, Inc.*,
248 F.3d 1349 (Fed. Cir. 2001) ....................53

*SkinMedica, Inc. v. Histogen Inc.*,
727 F.3d 1187 (Fed. Cir. 2013) ....................20

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011)....................53

*Sosna v. Iowa*,
419 U.S. 393 (1975)....................12, 13, 31, 43

*Stickle v. Heublein, Inc.*,
716 F.2d 1550 (Fed. Cir. 1983) ....................52

*Superior MRI Servs., Inc. v. All. Healthcare Servs*., Inc.,
778 F.3d 502, 504 (5th Cir. 2015) ....................45

*SynQor, Inc. v. Cisco Sys., Inc.*,
No. 2:14-CV-286, 2014 WL 12638157 (E.D. Tex. Sept. 4, 2014) ....................53

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
785 F.3d 625 (Fed. Cir. 2015) ....................21, 28

*Teva Pharms. USA, Inc. v. Pfizer, Inc.*,
395 F.3d 1324 (Fed. Cir. 2005) ....................14

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) ....................55

*TRW, Inc. v. Ellipse Corp.*,
495 F.2d 314, 322 (7th Cir. 1974) ....................................................................59

*Wilton v. Seven Falls Co.*,
41 F.3d 934 (5th Cir. 1994), *aff'd*, 515 U.S. 277 (1995)....................................59

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995).........................................................................................47

**Federal Statutes**

12 U.S.C.
§ 5002(2)...........................................................................................................20

35 U.S.C.
§ 271(b)-(c) .......................................................................................................22
§ 284.................................................................................................................52
§ 299.................................................................................................................50

**Rules**

Fed. R. Civ. P. 20 ..............................................................................................50

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................55

Fed. R. Civ. P. 47.5 ............................................................................................ xiii

## STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rule 47.5, counsel for United Services Automobile Association states that the same civil action was previously appealed in *Mitek Systems, Inc. v. United Services Automobile Association*, No. 2021-1989, before Justices Dyk, Taranto, and Cunningham. 34 F.4th 1334 (Fed. Cir. May 20, 2022). Counsel for United States Automobile Association is not aware of any case pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

## INTRODUCTION

The district court properly dismissed the declaratory judgment action filed by Mitek Systems, Inc. ("Mitek") against United Services Automobile Association ("USAA"). In a sixty-two page order, the district court analyzed the issues identified as pertinent by this Court in its prior decision, *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1340 (Fed. Cir. 2022) (*Mitek I*), and found no "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Appx13-14, Appx66.

The district court found that the pleadings, evidence, and Mitek's admissions (including representations that "[USAA] has never accused or even threatened Mitek of infringement" and Mitek's product "performs only some (but not all) of the limitations of any claim," Appx45, Appx56) demonstrate that USAA never explicitly or implicitly accused Mitek of infringement. Further, although Mitek argued that jurisdiction could alternatively be premised on indemnity demands from banks who received letters from USAA, the evidence on remand revealed that Mitek had not received any such demands when it filed its Complaint, and Mitek's agreements have applicable carve-outs in any event.

Additionally, there is a second, fully independent basis for affirmance, which Mitek all but ignores. Since Mitek seeks to adjudicate the liability of its customers and its own liability for indirect infringement, its proposed action would

require evidence from, and involvement of, thousands of third parties regarding their individual mobile deposit systems. Appx93. The district court was uniquely situated to appreciate how incredibly unwieldly this would be, having overseen the two trials between USAA and competitor banks regarding just two such systems and a subset of the Patents-in-Suit. Each required complex evaluation of the specific system developed and configured by the particular bank (including non-Mitek components and differing customizations of Mitek software) and numerous other non-overlapping issues and defenses. Further, the district court explained that a far more efficient alternative, intervention, was available for any action in which Mitek believed its interests were implicated. Thus, even if there were jurisdiction, the district court clearly did not abuse its discretion in holding that it would decline to exercise it, which is independent grounds for affirmance.

## STATEMENT OF THE CASE

### I. The Parties

USAA is a reciprocal inter-insurance exchange that has served present and former members of the United States military and their families since 1922. Appx81. In the mid-2000's, USAA founded an Innovation Lab to develop and improve technologies to better serve its members, including its active duty military members who are frequently on-base or deployed, and thus lack regular access to bank branches. Appx139. Through investment of years of time and engineering

resources, USAA developed groundbreaking technology now known as MRDC and in 2009 was the first United States bank to provide mobile deposit through a smartphone application. Appx138-139. USAA's patents arising out of these ground-breaking initiatives include the Patents-in-Suit: U.S. Patent Nos. 8,699,779 ("the '779 Patent"); 9,336,517 ("the '517 Patent"); 9,818,090 ("the '090 Patent"); and 8,977,571 ("the '571 Patent").

Mitek is a software company headquartered in San Diego, California. Appx29. Mitek does not offer mobile deposit systems or financial services. Rather, it partners with various service companies to license software libraries to third-parties, who then decide how to implement and customize this software. Appx935. For the software library at issue, known as "MiSnap," Mitek contends it has approximately 6,400 end-users. Appx1613.

## II. USAA v. Wells Fargo

Wells Fargo Bank is one such end-user of MiSnap. Appx82-83. USAA and Wells Fargo are competing banks. Several years after USAA launched its ground-breaking mobile deposit system, Wells Fargo introduced a competing system. Appx148.

In June 2018, USAA filed a complaint against Wells Fargo in the Eastern District of Texas, alleging that Wells Fargo® Mobile Deposit infringed the Patents-in-Suit. Appx82-83, Appx136. USAA also filed a second complaint

against Wells Fargo in August 2018 involving five other MRDC patents. Appx424. In November 2019, when Mitek filed the Complaint at issue, these were the only USAA suits that existed. Later, USAA litigated with two additional competitor banks, PNC/BBVA[1] and Truist.

Wells Fargo's system included components supplied by Wells Fargo and third parties and a customized version of Mitek's "MiSnap" software. Appx55-56. Wells Fargo did not [redacted]. Appx957-958. Mitek, however, voluntarily worked with Wells Fargo counsel to coordinate invalidity defenses, Appx1537-1538, and provided a Mitek witness to present a purported non-infringement defense regarding one claim element (the timing of "capture"). Appx2544-2546.

At the Wells Fargo trial, all parties agreed that Wells Fargo, not Mitek, built, customizes, controls, and bears responsibility for the infringing Wells Fargo mobile deposit application. For example, USAA's technical expert testified that "Wells Fargo develops their app internally," Appx400-402, and its "mobile deposit software involves code that Wells Fargo wrote on its own," Appx394. Mitek's corporate representative similarly testified that it is "up to the banks or the user to

---

[1] The district court and Mitek sometimes refer to PNC and BBVA separately, but BBVA was acquired and merged into PNC. The PNC/BBVA suits were filed in 2020 and involved two Patents-in-Suit (the '571 and '779) and the Truist suit was filed in 2022 and involves one (the '090 Patent). Both actions also involved other patents not at issue here.

decide" how to implement Mitek software. Appx336-337. Wells Fargo's counsel represented that just "some of" the Wells Fargo® Mobile Deposit system was "Mitek's software" and "there's a lot of Wells Fargo's software in there, as well." Appx558.

On November 6, 2019, the jury found Wells Fargo liable for willful infringement. Appx416-422. In early 2021, USAA and Wells Fargo reached a global settlement of multiple litigations. Appx1019.

## III. Mitek's Declaratory Judgment Complaint

On November 1, 2019, during the USAA-Wells Fargo trial, Mitek filed a Complaint in the Northern District of California, seeking a declaration "[t]hat Mitek and its customers have not infringed, either directly or indirectly." Appx93. Mitek's Complaint transparently sought to re-litigate the Wells Fargo action. The only non-infringement argument that Mitek identified in its Complaint was for the same element that Wells Fargo was simultaneously contesting at trial through Mitek witness, Appx90-93, Appx316.

USAA moved to dismiss for lack of jurisdiction or, in the alternative, transfer to the Eastern District of Texas. Appx254. The Northern District of California granted the motion to transfer, finding Mitek's case had "at best" a "weak connection" to the Northern District of California, and that Mitek's choice of forum, where neither side has a place of business, "smack[ed] of forum

shopping." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 19-CV-07223, 2020 WL 1922635 at *5 (N.D. Cal. Apr. 21, 2020), *aff'd*, 34 F.4th 1334 (Fed. Cir. 2022). Upon transfer, the Eastern District of Texas granted USAA's motion to dismiss. Appx66.

## IV. Prior Appeal And Remand

Mitek appealed the transfer and dismissal orders. In *Mitek I*, this Court affirmed the transfer order, and remanded to the Eastern District of Texas for further analysis regarding jurisdiction, identifying specific issues for the district court to analyze before reaching a decision regarding jurisdiction. *Mitek I*, 34 F.4th at 1349. First, for Mitek's theory that it reasonably apprehended an infringement suit from USAA, the panel instructed the district court to "ascertain the alleged role of the Mitek technology in the banks' applications and the alleged role that the Mitek technology plays in infringement claims." *Id.* at 1344. Second, for Mitek's theory that it allegedly received indemnification demands from entities to whom USAA sent licensing letters, the panel instructed further analysis of the "character of the indemnity demands received and the precise scope of the corresponding indemnity agreements." *Id.* at 1346.

Additionally, because the district court had not described its reasoning for its alternative holding that it would decline exercise jurisdiction, the panel also instructed the district court to make additional findings, including on "the scope of

what would have to be adjudicated in Mitek's suit for a declaration of noninfringement on behalf of Mitek and all of its customers" and "whether intervention would provide Mitek adequate relief." *Id.* at 1347.

On remand, the parties submitted additional briefing and exhibits. Appx75-79. After a multi-hour hearing, the district court dismissed the Complaint on multiple grounds. Appx66. First, as detailed further below, the district court found that Mitek did not face a reasonable potential of a suit from USAA for either direct or indirect infringement. Appx39-47. Second, the district court found that Mitek's evidence regarding indemnity agreements did not supply jurisdiction. Appx49-58. Finally, as an independent basis for dismissal, the district court found that discretionary denial is appropriate. Appx58-66. Among other things, the district court explained that Mitek's proposed suit would be unworkable because it would require substantial third party discovery from, or joinder of, thousands of end-users. Appx64. In contrast, the district court concluded that targeted intervention would provide a far more appropriate alternative, whereby Mitek could address any perceived claims against its software, and any obligation to any particular customer, while obviating "the need to take third-party discovery or join additional parties." Appx61.

## SUMMARY OF ARGUMENT

The District Court correctly concluded that Mitek failed to satisfy its burden

of pleading or proving its jurisdictional theories, i.e., (1) reasonable potential of an infringement suit from USAA or (2) potentially meritorious indemnification demands from banks who were accused of infringement. Mitek's Opening Brief fails to identify any error in the district court's detailed analysis, let alone clear error (the applicable standard of review here). The district court's decision should be affirmed for the following reasons.

First, with respect to direct infringement, Mitek does not argue that its software satisfies all limitations of any claim. To the contrary, before the PTAB and the district court below, Mitek affirmatively represented that its software relates only to a subset of limitations, and that USAA never accused Mitek of infringement. As the district court explained, and Mitek does not seriously contest, whether and to what extent a bank's system infringes turns on configurations, decisions, and additional components and software supplied by end-user banks.

On remand, Mitek attempted to overcome this fundamental deficiency by vaguely arguing that, unbeknownst to USAA, it directly infringed by internally "testing" a "mobile deposit system." Appx1620-1621. Mitek's Complaint contains no such allegation, and jurisdiction cannot be based on a theory Mitek never pled. Moreover, even when Mitek made the argument years later, it filed all information about its alleged testing (including even the existence of such testing) entirely under seal, confirming that USAA had no knowledge of it, *see id.* Mitek does not

and cannot argue that it reasonably believed USAA would bring suit based on testing USAA did not even know about, much less ever accused of infringement.

Second, the district court correctly held that Mitek did not face the reasonable potential of suit for indirect infringement. With respect to contributory infringement, USAA never implicitly alleged that MiSnap is not capable of "substantial non-infringing use" (a required element). On the contrary, USAA, Mitek, and the third-party banks all represented that MiSnap has viable alternative uses that do not infringe. With respect to inducement, USAA never implicitly accused MiSnap of encouraging any bank to commit every element of infringement, nor has it ever relied on MiSnap to demonstrate that all elements of any claim are met.

Third, the district court correctly concluded that Mitek failed to prove its indemnification theory. The evidence on remand established that, when Mitek filed its Complaint (which is when jurisdiction must be established), Mitek had received just ***one*** indemnification request. That request was not from a bank, much less a bank who had any controversy with USAA. It was from a third-party service provider, who never received any communication from USAA, and who USAA had indisputably never sued or threatened to sue. As the district court noted, citing Federal Circuit precedent, this is independently dispositive:

> "The agreement to defend or indemnify a third person does not provide the actual controversy whereby the defender or indemnitor

> may bring a declaratory action on its own behalf when there is no actual controversy involving the indemnitee. The indemnitors' standing in such case is derivative, not original and independent."

Appx56 (quoting *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 981 (Fed. Cir. 1993)). Moreover, the district court also found that Mitek's agreement with the entity who sent the request contains an express carve-out [redacted] Confidential Mitek Agreement. Since it is undisputed that infringing banking systems necessarily include [redacted] Confidential Mitek Agreement, this exclusion would apply. Appx61.

Further, the district court also correctly found that the history of USAA's infringement suits, which gave it first-hand observation of "USAA's methods and strategies," further confirm the absence of any reasonable potential of suit against Mitek. Appx62. The district court observed that USAA's litigation strategy has exclusively focused on competitor banks (Wells Fargo, PNC/BBVA, and Truist) who create and use complete mobile deposit systems, not component suppliers. Moreover, as the district court observed, the two other litigations following the Wells Fargo action have not even involved all of the Patents-in-Suit, and Mitek's software did not play any major role. Moreover, it has now been more than six years since Mitek contends USAA sent letters, USAA has only sued three banks (all major competitors of USAA), and Mitek has never been subject to any

indemnification claim, much less liability.

Finally, the district court correctly held that discretionary denial is appropriate even assuming jurisdiction exists. Mitek's proposed declaratory judgment suit would require many (potentially thousands) of mini-trials and extensive third party discovery regarding how each user chose to implement MiSnap, and Mitek's role in this process. This is not workable. Moreover, as the district court explained, Mitek has a far more efficient alternative to protect any perceived interest. If Mitek believes there is a need to aid a customer or defend an argument about its software in a suit between USAA and a bank, intervention is an available and far superior remedy. The fact that Mitek has never attempted to intervene in any suit (even after the district court expressed to Mitek in its original dismissal order that intervention would be the appropriate path, Appx9) illustrates that Mitek's true motive is not to protect its rights, but to attempt to interfere with USAA's litigation strategy of bringing suits against specific competitor banks who use USAA's patented technology to offer competing mobile deposit systems.

Thus, as detailed below, the district court's judgment should be affirmed.

## STANDARD OF REVIEW

Where, as here, a motion to dismiss "challenge[d] the truth of jurisdictional facts alleged in a complaint," the district court's factual findings are reviewed for "clear error." *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003); *see*

*also In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) ("Where . . . the district court has expressly relied on its resolution of disputed jurisdictional facts, 'those findings are reviewed for clear error.'") (citations omitted).

Where a district court declines jurisdiction over a declaratory judgment action in the alternative, as the district court did here, that decision is reviewed for "abuse of discretion," *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361 (Fed. Cir. 2020).

## ARGUMENT

### I. The District Court Correctly Dismissed Mitek's Suit For Lack Of Subject Matter Jurisdiction

#### A. Mitek Did Not Establish Reasonable Potential Of Suit For Infringement

To establish jurisdiction under its first theory, Mitek must both plead and where, as here, a factual challenge has been presented, also prove that "there is a substantial controversy" between Mitek and USAA of "sufficient immediacy and reality" over whether Mitek infringes the Patents-in-Suit. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Lewis v. Knutson*, 699 F.2d 230, 237 (5th Cir. 1983) ("[T]he jurisdictional basis must survive both facial and factual attacks . . . ."). Moreover, Mitek must establish that (1) jurisdiction existed "at the time of the action brought" *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004), and (2) "continue[d] throughout the entirety of the litigation," *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). In other words, "[l]ater events

may not create jurisdiction where none existed at the time of filing," *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1331 (Fed. Cir. 2012), but later events can extinguish jurisdiction, *Sosna*, 419 U.S. at 402.

The mere possibility that USAA could file suit against Mitek is not sufficient to establish jurisdiction. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (emphasis added). ("[J]urisdiction generally will not arise merely on the basis that a party . . . perceives such a patent to pose a risk of infringement. . . ."). Rather, the plaintiff must show an "***affirmative act by the patentee***" that implicates its legal rights. *Id.* (emphasis added). Thus, Mitek bears the burden to plead and prove that USAA "accused [it] of infringement" or took "actions which imply such claims." *Id.* at 1340. As explained in *Mitek I*, "[a]lthough Mitek is not obligated to prove, for jurisdictional purposes, that it infringes the patents-in-suit . . . 'there must be allegations by the patentee or other record evidence that establish at least a reasonable potential that [infringement claims against Mitek] could be brought.'" 34 F.4th at 1343 (quoting *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014)).

In sum, the jurisdictional inquiry requires proof both that there is a claim that ***could be brought***, and that there is reason to believe it ***will be brought***. Here the district court analyzed the elements of both direct and indirect infringement and correctly concluded that Mitek did not show a reasonable possibility—at the time

of the Complaint or at present—that USAA both could and would sue Mitek. This was not clear error.

#### 1. Mitek Expressly Represented To The PTAB That USAA Never Accused It Of Infringement And Its Software Does Not Address All Claim Elements

In post-grant review proceedings regarding the Patents-in-Suit, Mitek expressly stated to the PTAB that USAA "has never accused or even threatened Mitek of infringement of the challenged patent[s]." Appx1047. In the same submission, Mitek further represented as "undisputed fact" that "Mitek provides technology to Wells Fargo that allegedly only performs some (but not all) of the limitations of any claim of the challenged patent[s]." *Id*.

These party admissions by Mitek are dispositive or, at a minimum, highly probative of the absence of the requisite "substantial controversy" between Mitek and USAA of "sufficient immediacy and reality." Appx45 (Mitek's theories do "not square with its explicit statement to the PTAB"); *Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1333 (Fed. Cir. 2005) (no jurisdiction where plaintiff "virtually concede[d] that [defendant] will not bring immediate suit for infringement"). Mitek made these representations on December 20, 2020, ***after*** its Complaint. This establishes that, when Mitek filed its Complaint, USAA had not made accusations, threats, or allegations (either explicit or implicit) against Mitek or its software.

During the remand proceedings, Mitek attempted unsuccessfully to walk back these admissions by arguing that it only meant that USAA did not "expressly" accuse Mitek of infringement. Op.Br.27. The district court did not err by rejecting this attorney argument in favor of Mitek's actual statements to the PTAB. The actual statements did not include "expressly" or any qualifier. Instead, Mitek represented as an "***undisputed fact***" that its technology does ***not*** practice all limitations of any claim. Appx1047 (emphasis added).

Moreover, Mitek's statement would have made no sense if limited only to "express" accusations. The purpose of its submission was to argue that "the relationship between Mitek and Wells Fargo with respect to the assertion of the challenged patent[s]" is "***nonexistent***." *Id*. In other words, USAA's allegations against Wells Fargo were not targeted at Mitek. As the district court found, there is every reason to accept Mitek's representation that USAA never "accused or even threatened" Mitek, and that USAA never alleged that Mitek's software satisfies all elements of any claim, as an accurate reflection of Mitek's belief. Appx2514 ("So you must not have believed at the time you made that statement to the PTAB that USAA thought you infringed, either directly or indirectly or implicitly or explicitly."). Mitek's suggestion that the PTAB "disagreed," Op.Br.27, is incorrect. The PTAB simply held that Mitek's challenge warranted discretionary denial because Wells Fargo previously challenged the same patents under a common

interest agreement with Mitek regarding invalidity. Appx1537-1538.

In sum, the district correctly found that Mitek's own admissions established that it did not face the reasonable potential of an infringement suit from USAA. Appx45, Appx48. This was not clear error, and constitutes an independently sufficient basis for affirmance.

### 2. Mitek Did Not Establish Reasonable Potential Of Suit For Direct Infringement

In addition to Mitek's admissions, the district court analyzed other record evidence, which further supported its finding that Mitek did not face the reasonable potential of an infringement suit from USAA. Direct infringement requires that "every limitation set forth in a claim must be found in an accused product." *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016). It is undisputed that USAA has never alleged or even implied that Mitek's software satisfies every limitation of the asserted claims. In addition to Mitek's admission to the PTAB discussed above, Mitek confirmed to the district court that there is no allegation that "MiSnap alone performs all the asserted limitations of the patents in suit." Appx2222. Any contrary position on appeal is waived. In any event, Mitek's Opening Brief also concedes that USAA never alleged that MiSnap performs every limitation. Op.Br.41 ("USAA alleged that ***two of the three*** limitations of claim 1 of the '571 Patent and ***four out of seven*** limitations of claim 1 of the '090 Patent were allegedly performed by MiSnap.") (emphasis added).

The district court's findings are also supported by other record evidence that infringing systems require additional technology aside from the MiSnap software. For example, claim 1 of the '090 patent requires "a processor configured to…control the presentation device to present feedback information describing an instruction for satisfying the monitoring criterion." Appx1873. It is undisputed that MiSnap is simply software, Op.Br.41, and further does not require the user to configure a processor to present feedback information at all, much less feedback information specifically describing an instruction for satisfying monitoring criteria. Appx42 ("[F]eedback instruction . . . can be changed or turned off."); Appx1161 (banks have "full control" to "customize what monitoring criteria and feedback are used.").

As another example, three of the patents require "provid[ing] the image of the check from the camera to a depository." Appx273, Appx212, Appx242. This exclusively uses the bank's own internal system and code. *See, e.g.* Appx1158-1160 (expert testimony discussing code written and implemented by Wells Fargo); Appx1163 ("code that Wells Fargo wrote on its own"). Mitek confirmed that what happens after the image is captured is "out of [Mitek's] hands." Appx1207 ("Q. And then after that JPEG is created, ultimately, it will be returned to the Wells Fargo app which will send it to the Wells Fargo server, correct? A. MiSnap returns it back to the Wells Fargo app. It's out of our hands after that.").

Mitek's assertion that "the district court failed to give proper weight to the programmed capabilities of the MiSnap software," Op.Br.19, misses the mark for these same reasons. Direct infringement is not established by evidence that an end user might (or might not) elect to infringe. Mitek relies on *Finjan, Inc. v. Secure Computing Corp*., 626 F.3d 1197 (Fed. Cir. 2010), but that case involved a claim construction question of whether a particular claim should be construed to require actual performance of steps, or only code capable of executing each step. Here, notably Mitek does not argue that its software would satisfy all elements of any claim, under any claim construction. To the contrary, as noted above, Mitek represented to the district court and PTAB that each claim has elements that its software alone has not been alleged to, and cannot, satisfy.

Recognizing that its own admissions preclude the direct infringement argument it pled on remand and in this second appeal, Mitek now argues that it directly infringes because it "tests the 'complete mobile deposit system.'" Op.Br.34. The district court correctly rejected this theory for several reasons. Appx43.

First, Mitek never made this allegation in its Complaint and never sought leave to amend. Appx43; *U.S. ex rel. Mathews v. HealthSouth Corp*., 332 F.3d 293, 296 (5th Cir. 2003) ("The failure to obtain leave results in an amended complaint having no legal effect."). It is a "well-established" rule "that parties

cannot amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Mitek's Opening Brief does not even address this defect.

Second, Mitek concedes that USAA was unaware of its purported testing. Mitek mentioned it for the first time in its post-remand briefing, in 2022, and even then Mitek filed it under seal, for outside attorneys' eyes only, Appx1643, so no one at USAA could see it. There is no merit to Mitek's argument that conduct unknown to USAA can create a justiciable controversy. Op.Br.35. As discussed above, the mere possibility that USAA could bring suit against Mitek is not sufficient; an "affirmative act" by the patentee is always required. *Prasco*, 537 F.3d at 1339. USAA indisputably took no action before the time of the Complaint regarding Mitek's testing, and could not have done so given that it was unknown.

Third, other than the bare assertion on remand that it performs testing, Mitek provided no documentation or details, e.g., whether any tests even occurred in the United States before the date of the Complaint, what settings and features were used, etc. Appx1646. Moreover, to the extent that Mitek's assertion that it tests a "complete mobile deposit system" could be interpreted as including the depository and check processing limitations of the claims, this is facially implausible. Mitek is not a bank, and thus cannot lawfully maintain a depository or perform deposit or any of the other claimed banking functions. *See* 12 U.S.C. §5002(2) (defining

"bank" and "depository institution").

Mitek's cited cases of C*apo, Inc. v. Dioptics Med. Prod., Inc.*, 387 F.3d 1352 (Fed. Cir. 2004) and *AVC v. Asetek Danmark*, 837 F.3d 1249 (Fed. Cir. 2016), are readily distinguishable because they included the requisite "affirmative act" missing here. In both cases, the patentee directly threatened the plaintiff with suit. In light of those threats, the fact that the patentees had not "adequately investigated the basis of its threats," *Capo*, 387 F.3d at 1356, or made only general allegations, *AVC*, 837 F.3d at 1254, did not defeat jurisdiction. Here, it is undisputed that USAA has never threatened Mitek with a suit at all, let alone a suit based on testing.

Recognizing this fatal defect, Mitek argues for the first time on appeal, in a footnote, that (1) it is "common sense" that Mitek would test and (2) its webpage advertises "on-premises deployment options." Op.Br.35n.6. These arguments are waived because Mitek "failed to raise [them] …below." *Ladd v. United States*, 713 F.3d 648, 655 (Fed. Cir. 2013). Moreover, Mitek's website is "not in the record" and thus "give[n] no weight." *SkinMedica, Inc. v. Histogen Inc*., 727 F.3d 1187, 1206 (Fed. Cir. 2013). Regardless, neither argument would have helped Mitek even if pled and argued below as neither establishes an affirmative act by USAA. Moreover, as explained above, it is far from obvious that Mitek tests a "complete mobile deposit system." To the contrary, this is implausible as Mitek is not a bank.

Mitek argues that the district court erroneously found "harm" to be an element of direct infringement, Op.Br.34, but that mischaracterizes the district court's reasoning. The district court merely made the additional point that, absent evidence of harm, there was no reason for USAA to bring suit against Mitek. Appx43. That further demonstrates the absence of any controversy between USAA and Mitek. As this Court held in *Prasco,* "[t]he lack of any evidence that the defendants believe or plan to assert that the plaintiff's product infringes their patents creates a high barrier to proving that [plaintiff] faces an imminent risk of injury." 537 F.3d at 1340.

### 3. Mitek Did Not Establish Reasonable Potential Of Suit For Indirect Infringement

The district court also correctly concluded that Mitek did not demonstrate that it faced the reasonable potential of a suit from USAA for indirect infringement (contributory infringement or inducement). There is no basis to Mitek's suggestion that the mere existence of a suit against Wells Fargo, which purchased software from Mitek and then customized and combined it with other code and components, somehow constitutes an allegation of indirect infringement against Mitek. *See Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 630 (Fed. Cir. 2015) ("[T]here is no indirect infringement 'when a defendant merely sells a commercial product suitable for some lawful use.'") (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)). Mitek wholly failed to show that USAA

implicitly alleged either that (1) MiSnap is not "suitable for substantial non-infringing use[s]" (i.e., contributory infringement) or (2) that Mitek "actively induce[d]" Wells Fargo to commit infringement (i.e., inducement). 35 U.S.C. § 271(b)-(c).

Mitek expressly acknowledged this in its statement to the PTAB confirming that USAA has never accused or threatened Mitek in any way. On the contrary, the evidence USAA introduced in the Wells Fargo case consistently focused on Wells Fargo's own conduct, optional design choices, and integration with non-Mitek components. Appx55 ("It is undisputed that all allegations of infringement have been against banks' use of MiSnap in their own applications with 'significant customization [of MiSnap] and integration with other components.'"). USAA never alleged that Mitek was responsible for these decisions. Rather, as the testimony in the Wells Fargo trial made clear, the parties agreed that it is "up to the banks or the user to decide" how MiSnap is used. Appx1169.

Following the direction in *Mitek I* to "ascertain the alleged role of the Mitek technology in the banks' applications and the alleged role that the Mitek technology plays in infringement claims," *Mitek I*, 34 F.4th at 1344, the district court analyzed how the bank's ability to control and customize Mitek's features related to the specific elements of USAA's asserted claims. *Mitek I*, 34 F.4th at 1343. The district court correctly concluded that USAA's infringement theories

hinged on several “fully customizable features” each of which are controlled by the bank. Appx42-43. The following are some examples:

First, all four Patents-in-Suit require automatic capture of a check whereby the application automatically takes a picture of the check when specific technical criteria are met. Appx212, Appx242, Appx273, Appx304. Whether to use automatic capture is determined by the bank, as Mitek’s representative explained at the Wells Fargo trial:

> Q. Who makes the decision whether MiSnap uses manual capture or auto capture?
> A. That’s up to the banks or the user to decide.

Appx1169. Thus, banks can choose to implement MiSnap without performing autocapture at all. PNC, one of the largest banks in the United States and a Mitek customer, made exactly that choice for some of its products. Before August 2017, PNC used autocapture in some but not all consumer applications. Appx1236. Then, from August 2017 to mid-2021, PNC used autocapture in all applications. *Id*. In mid-2021, PNC (while continuing to use MiSnap) eliminated any use of auto-capture in its consumer mobile applications. Appx1236-1237 (USAA expert testifying that the post-2021 PNC application on customer mobile phones no longer infringed these patents).

Second, as noted above, many claims (including all claims of the ‘090 patent) require “feedback information,” and further require the feedback

information to "describ[e] an instruction for satisfying the monitoring criterion." *See, e.g.,* Appx1268-1269. Banks do not need to use feedback at all, and if they do, such feedback need not provide "an instruction for satisfying the monitoring criterion." As USAA's expert at the Wells Fargo trial explained, and Mitek does not dispute, this a design choice by the bank. Appx1161 ("Q. To what extent can Wells Fargo customize what monitoring criteria and feedback are used? A. In fact, they have full control here.").

Third, two of the Patents-in-Suit require specific alignment guide features. Appx212 ("[W]herein the processor is configured to project an alignment guide in the display of the mobile device…automatically capture the image of the check when the image of the check is determined to align with the alignment guide"); Appx242. Banks determine this element as well. Indeed, PNC touted its control over this element to the Western District of Pennsylvania in a suit it filed against USAA. There, PNC explained that PNC alone determined whether to use this feature, including whether capture occurs "when the image of the check is determined to align with the alignment guide." Appx1409-1410. PNC's counsel stressed PNC's wide flexibility to decide which shape is used, and that only some configurations would infringe:

> [Y]ou can take that rectangle and you can make it a triangle or you can manipulate it, you can change it. And the software is still going to automatically take a picture of the check, which means that it's not monitoring anything having to do with that rectangle to decide when

> it's going to take a picture of the check, which is the required element of the patent.

*Id.* Banks also have the option of not using an alignment guide at all, as Mitek agrees. Appx1724 (regarding the alignment guide of the '517/'779 Patents: "MiSnap displays a ghost image on a screen to the user that's selected it, but it can be turned off too. It doesn't have to be there.").

The above examples along with other record evidence demonstrates that USAA's infringement actions did not implicitly accuse Mitek of indirect infringement:

***Contributory infringement.*** With respect to contributory infringement, the district correctly found that "there has never been a suggestion, in claim charts or otherwise, that MiSnap is not suitable for substantial non-infringing uses or that Mitek knew its software was 'especially made or adapted for use in an infringement' of USAA's patents." Appx46. On the contrary, as the district court stressed, "USAA has *expressly* said the opposite—i.e., that MiSnap has several substantial non-infringing uses." *Id.* This is dispositive because, "[w]here the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012).

For example, banks could choose to use manual capture (whereby the user

has to click a button to take a picture of the check). As Wells Fargo's corporate representative testified, banks have "the ability to flip the switch, if you will, and cease use of the infringing technology," while still providing mobile deposit. Appx1231-1232. This alone constitutes a "substantial non-infringing use." A non-infringing use is "substantial" so long as it is not "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *In re Bill of Lading*, 681 F.3d at 1338. Manual capture easily satisfies this test. Indeed, as explained above, at least one major bank, PNC, has chosen to use MiSnap for manual capture in multiple applications.

Banks similarly decide whether or how to use feedback, monitoring criteria, or an alignment guide as explained above. Appx44. Moreover, MiSnap is not even limited to mobile check capture. It can also be used on any type of documents such as driver's licenses or passports. Appx1643-1644 ("MiSnap can provide real-time user feedback that guides the end user in positioning the mobile device over a document…."). These are additional non-infringing uses.

Mitek's Opening Brief largely ignores the evidence above. Mitek instead cites evidence stating that 94% of Wells Fargo customers used the autocapture mode. Op.Br.44 (citing Appx1161). This is irrelevant since Wells Fargo (unlike, for example, PNC) chose to configure every application for autocapture, and thus uses manual capture only when autocapture fails. Appx1170. Mitek also argues

that the autocapture feature is "innovative" and offered by many "top banks." Op.Br.44. But this is likewise irrelevant. Even where "practicing the patented method may be the most logical or useful purpose for Appellees' products [that] does not render the alternative uses 'unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *In re Bill of Lading*, 681 F.3d at 1338. Here, Mitek specifically designed MiSnap to be customized, and the evidence demonstrates that users have used it in both infringing and non-infringing systems.

This case is thus readily distinguishable from *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) on which Mitek relies. In that case, "the jury heard ample testimony that the noninfringing, binary file format was not [] practical or worthwhile." *Id.* at 851. In contrast, here, the evidence is that some actual banks have used Mitek's software while avoiding these particular patents. Moreover, as the district court emphasized, USAA conceded that "MiSnap has several substantial non-infringing uses." Appx46. This alone demonstrates the absence of jurisdiction based on contributory infringement. *Cisco Sys., Inc. v. Alberta Telecommunications Rsch. Ctr.*, 538 F. App'x 894, 897 (Fed. Cir. 2013) (no jurisdiction where the patentee agreed "there are substantial non-infringing uses of Cisco's products").

***Inducement.*** The district court also correctly found that USAA had not implicitly accused Mitek of inducement. Among other things, inducement requires

an allegation that the supplier "induce[d] another actor to commit all the elements of infringement." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1305 (Fed. Cir. 2012); *see also MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1332 (Fed. Cir. 2005) (no inducement where there was no "record evidence that eBay intended to induce ReturnBuy to incorporate the other limitations of the asserted claims") *vacated on other grounds*, 547 U.S. 388 (2006). USAA has never alleged (either explicitly or implicitly) that Mitek specifically encouraged Wells Fargo (or any other bank) to practice all of the limitations of any asserted patent. Instead, USAA focused on Wells Fargo's own customization decisions, software code, and configurations to demonstrate infringement as explained above.

Mitek does not contend otherwise. Instead, it argues that "the record evidence establishes that Mitek provides various guides, manuals, and instructions to its customers that explain, among other things, how to configure and use all the relevant functionalities, such as auto-capture." Op.Br.42. But this argument fails for at least two independent reasons. First, "'describ[ing],'an infringing mode is not the same as 'recommend[ing],' 'encourag[ing],' or 'promot[ing],' an infringing use, or suggesting that an infringing use 'should' be performed." *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (internal citations omitted). Second, as the district court found, and Mitek does not dispute, the relevant inquiry concerns ***USAA's*** actions, and USAA "*never* cited to Mitek

documentation in its claim charts as evidence of infringement of every element of every asserted claim." Appx46.

Rather, USAA introduced Mitek's documentation only to rebut the non-infringement defense that Wells Fargo and Mitek jointly presented at the trial, relating to a sub-part of one claim limitation. Specifically, the argument was that the Wells Fargo system did not satisfy the timing aspect of the "capture" limitation. *See, e.g.*, Appx557 (Wells Fargo counsel: "In these patents, first the check must be analyzed to determine whether it meets this monitoring criterion, and only at or after that moment, not before, the image is captured."). USAA demonstrated that this specific timing argument, relating to one claim element, was contradicted by Mitek's documentation. *See, e.g.*, Appx1736 ("Mitek Public Presentations Further Confirm That Capture Occurs After Monitoring"); Appx1772, Appx1840-1843 ("…Capture After Monitoring").

USAA's claims were otherwise focused on Wells Fargo's application, which, Wells Fargo developed. Appx1152-1153 ("Wells Fargo develops their app internally"). *DataTern*'s reasoning thus is squarely on point. There, Microsoft demonstrated a substantial controversy regarding inducement with respect to one patent because the claim charts for that patent "cite[d] to Microsoft-provided online documentation for *each limitation* of the . . . patent's representative claims." *DataTern*, 755 F.3d at 905 (emphasis added). With respect to the other patent,

however, there was no controversy because the *DataTern* claim charts did not rely on Microsoft's documentation for all limitations: "[w]hile these claim charts allege the customers' direct infringement of the '402 patent based on its use of Microsoft's ADO.NET, they do not impliedly assert that Microsoft induced that infringement." *Id*. Here, similarly, USAA did not rely on Mitek's documentation to establish each limitation of any asserted claim.

Mitek does not dispute this dispositive fact, so on appeal it attempts to change the inducement inquiry to whether "the supplier's product is a '*material* component' of the customer's alleged direct infringement." Op.Br.38 (citing *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368 (Fed. Cir. 2011)). This is not the inducement test. As *Arris* confirms, whether the supplier's part is a "material component" is one of the necessary elements of *contributory* infringement (which also requires an absence of "substantial non infringing use"). 639 F.3d at 1376; *In re Bill of Lading*, 681 F.3d at 1337. *Arris* does not say that providing a "material component" is sufficient to show *inducement*. As *DataTern* makes clear, the mere fact that a material component of a product is "capable of being used in an infringing manner is *not* sufficient to create a substantial controversy regarding inducement." *DataTern, Inc*., 755 F.3d at 905.

Like *DataTern*, *Arris* confirms that jurisdiction is lacking. Unlike here, the patentee in *Arris* relied on the plaintiff's software for ***each element of each***

***asserted claim***. *Arris Grp.*, 639 F.3d at 1377 ("BT's claim table then purported to match *every limitation* of claim 19's 'packet network element' to the functionality of Arris' E–MTA."); *id.* (BT's "claim table matched *every limitation* of claim 20's 'host element' to the functionality of the 'Arris Cadant® C4 CMTS"; *id.* at 1378 ("BT's claim tables again linked the functionality of Arris' E–MTAs or CMTSs within Cable One's network to the performance of *every method step*."). Here, again, it is undisputed that USAA has never relied upon Mitek for each element of any claim. Rather, Mitek concedes that at most "some (but not all)," elements are implicated, Appx1047. USAA's infringement claims against banks have focused on the banks' conduct since, as Mitek concedes, it is "up to the banks or the user to decide" how to make and use their deposit systems. Appx1169-1170.

#### 4. The History Of USAA's Enforcement Efforts Confirm The Absence Of Jurisdiction

As additional support for its conclusion that Mitek does not face the reasonable potential of an infringement suit, the district court noted several events subsequent to the filing of the Complaint. *Sosna*, 419 U.S. at 402 (jurisdiction must "continue throughout the entirety of the litigation."). Notably, Mitek alleges that USAA's supposed "licensing and enforcement campaign" began *six years* ago. Appx81-82. Yet Mitek has never alleged that it incurred any liability relating to the Patents-in-Suit in that time. The alleged basis for jurisdiction in its Complaint was USAA's suit against Wells Fargo, but that case settled years ago without

consequence to Mitek. Appx18-19. Even assuming there ever was a justiciable controversy between USAA and Mitek with respect to Wells Fargo (and there was not), "such case or controversy did not continue to exist after the settlement with Wells Fargo." Appx48.

USAA's subsequent suits against PNC and Truist (which could not establish jurisdiction since they are post-Complaint) similarly confirm the absence of jurisdiction. As the district court found, these suits did not even include all of the Patents-in-Suit, nor did they meaningfully focus on MiSnap at all:

> [F]ewer of the Asserted Patents have been litigated and use of evidence related to MiSnap has decreased. Indeed, Mitek acknowledges that it did not participate in the subsequent trials as it did in the Wells Fargo Case, either by entering into common interest agreements, assisting with non-infringement defenses, or providing a corporate representative to testify.

Appx48-49. This is confirmed by Mitek's SEC filings, which state that patents in the PNC case involve "broad banking processes and *not Mitek's specific mobile deposit features*." Appx1219 (emphasis added). Mitek argues that "[t]he trial demonstratives from the PNC trial are clear that USAA continued to rely on Mitek documents," Op.Br.45, but cites to only a few slides, none of which address all limitations of any patent. Appx1905, Appx1910-1911, Appx1923-1924.

As the district court observed, the common thread between USAA's suits is that they are against direct competitor banks—Wells Fargo, PNC/BBVA, and Truist—not upstream suppliers like Mitek. This also highlights the absence of an

imminent controversy between USAA and Mitek. Appx49. *See, e.g.*, *DataTern*, 755 F.3d at 907 (finding no jurisdiction where "DataTern's litigation strategy appears to involve suing software users, not software suppliers"); *Allied Min. Prod., Inc. v. Osmi, Inc.*, 870 F.3d 1337, 1339 (Fed. Cir. 2017) (finding no jurisdiction where patentee "sent notice letters to the customers alone" and "sued only the customers, not the manufacturer."). This finding was not clear error.

Similarly, the district court did not err in noting that Mitek's real motivation in bringing suit was not fear of an infringement suit, but to "derail[] USAA's litigation strategy" against banks. Appx37. Mitek argues that it was improper for the district court to address Mitek's state of mind because, according to Mitek, "reasonable apprehension" is not the test, and subjective intent is irrelevant. Op.Br.24-32. Both arguments are contrary to settled precedent. As this Court specifically explained in *Mitek I*, while a reasonable apprehension of suit is not required in all instances under *Medimmune*, ***this is the theory that Mitek pled*** and that Mitek therefore must prove to maintain suit:

> The Supreme Court in *MedImmune* rejected a general requirement of a reasonable apprehension of suit. 549 U.S. at 132 n.11, 127 S.Ct. 764; *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007). Here, however, the district court's use of that concept is ***directly responsive to Mitek's particular*** theory as to whether Article III standing existed under the *MedImmune* standard.

*Mitek I*, 34 F.4th 1342, n.3; *see also Prasco*, 537 F.3d at 1336 (*Medimmune* "did not completely do away with the relevance of a reasonable apprehension of suit.").

Indeed, this was also the sole theory that Mitek pursued on remand. *See, e.g.*, Mitek Post-Remand Brief at 8 ("USAA's Infringement Allegations . . . Support Mitek's Reasonable Apprehension of Suit"). As Mitek conceded below, to maintain jurisdiction, its "reasonable apprehension of suit" must persist throughout the case. Appx2567 ("THE COURT: Well, I think the law is that not only do you have to have a reasonable apprehension, but it's got to be continuing. MR. MACK: That's true.").

Mitek's argument that its actual, subjective beliefs are irrelevant is equally baseless. Mitek cites *AVC* and *Prasco*, but those cases merely held that "a purely subjective or speculative fear of future harm" cannot *create* jurisdiction. *AVC*, 837 F.3d at 1253 (quoting *Prasco*, 537 F.3d at 1339). They did not hold that a plaintiff's own conduct and beliefs are irrelevant to determining whether jurisdiction exists.

For example, this Court has consistently held a plaintiff cannot have a "reasonable apprehension of suit" if it does not actually have any apprehension of suit at all. *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 942 (Fed. Cir. 2006) ("Microchip did not have any apprehension of itself being sued for patent infringement, much less a reasonable one"). Here, the fact that—over a six-year period extending to present—USAA never directed its infringement allegations at Mitek and consistently sued only competitor banks, coupled with

Mitek's own statements in SEC filings and its admission to the PTAB that USAA has never accused it of infringement or threatened Mitek in any way, all confirm that Mitek did not have any apprehension (much less a reasonable apprehension) that USAA intended to sue it for infringement.

The district court was also not wrong to consider evidence of Mitek's motivation. For example, in *BP Chemicals*, this panel considered statements made by the plaintiff indicating that the plaintiff was motivated to bring a declaratory relief action as a "marketing strategy," not because it apprehended imminent suits. *BP Chemicals*, 4 F.3d at 980.

Finally, Mitek argues that it still has a reasonable apprehension of suit because USAA has not granted it a covenant not to sue. Op.Br.31. The absence of such a covenant "is not sufficient to create an actual controversy." *DataTern, Inc*., 755 F.3d at 906 (citing *Prasco*, 537 F.3d at 1341). "[A] patentee has no obligation . . . to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit." *Id*. This case is a far cry from *Arris* on which Mitek relies. There, the patentee "repeatedly communicated" to the plaintiff that it was "committing contributory infringement . . . during the course of a protracted negotiation process." *Id.* at 903. The patentee also specifically alleged that the plaintiff's products were "'especially made or especially adapted' for a use that infringes the Patents-in-Suit" and "not …staple

article[s] or commodit[ies] of commerce suitable for substantial noninfringing use." *Arris,* 639 F.3d at 1378 (citing 35 U.S.C. § 271(c)). The Court noted that the absence of a covenant thus bolstered the other evidence demonstrating that the plaintiff faced the imminent risk of an infringement suit. Here, in contrast, USAA never communicated with Mitek at all, much less repeatedly communicated accusations of infringement.

In sum, the record evidence demonstrates that Mitek does not face the reasonable potential of an infringement suit. Mitek has not demonstrated that this finding constitutes error, let alone clear error.

### B. A Indemnification Request From An Entitiy That USAA Never Contacted Does Not Create Jurisdiction

Mitek also failed to establish jurisdiction under its second theory, i.e., that it has standing to seek declaratory judgment based on indemnification requests. This Court previously held that there was "just enough" in Mitek's Complaint to establish a case or controversy between USAA *and any specific banks that had received a letter from USAA* like the one attached to Mitek's Complaint. *Mitek I*, 34 F.4th at 1345. This Court remanded for further analysis as to whether any such indemnity requests created a justiciable controversy between Mitek and USAA. The district court received additional evidence, performed this analysis, and correctly found that the evidence did not support jurisdiction.

A party who is required to indemnify the target of an infringement claim has

standing to seek declaratory relief because an indemnifier "stand[s] in the shoes of [its] customers." *DataTern, Inc.*, 755 F.3d at 904. Further, as this Court previously held, while Mitek does not need to "concede[]" the applicability of any indemnification agreement, the "merits" of the alleged request are relevant. *Mitek I*, 34 F.4th at 1346 (quoting *DataTern*, 755 F.3d at 904). As the Court explained, "[t]he character of the indemnity demands received and the precise scope of the corresponding indemnity agreements . . . may bear heavily on the sufficiency of Mitek's indemnity-based interest in obtaining the requested declaratory judgment that can be sought." *Mitek I*, 34 F.4th at 1346.

The district court analyzed the "character" and "precise scope" of Mitek's alleged indemnification agreements and found that they did not give rise to jurisdiction for several correct and independently sufficient reasons.

#### 1. Mitek Had Not Received Any Potentially Meritorious Indemnification Demands At The Time Of Its Complaint

Jurisdiction "'depends upon the state of things at the time of the action brought.'" *Grupo Dataflux*, 541 U.S. at 570 (citing *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). Mitek suggested in its prior appeal that banks who received the USAA letters referenced in its Complaint had sought indemnity from Mitek. *Mitek I*, Case No. 21-1989, Dkt. 10 at 25 (Mitek asserting that "it has indemnity agreements with the very customers that USAA has targeted"); Appx6-7, Appx532-533; Op.Br.8. On remand, this was revealed as factually incorrect. Mitek

**Confidential Material Redacted**

had not received any indemnification demands from banks who received letters from USAA at the time of its Complaint, much less meritorious demands.

Mitek produced only one indemnity request sent before its Complaint. It was not from a bank, but rather an entity called [redacted]. Appx1717-1719. Mitek does not contend that [redacted] ever received a letter from USAA, or ever communicated with USAA at all. The letter stated that [redacted] received a letter from a third party, [redacted] (who also did not receive a letter from USAA), which in turn has some connection with another, unidentified entity, who allegedly received a letter from USAA. *See id.*

Mitek does not argue there was any justiciable controversy between [redacted] and USAA, which precludes any argument that [redacted]'s indemnity request creates the requisite controversy between Mitek and USAA. *BP Chemicals*, 4 F.3d at 981 (indemnitor may not "bring a declaratory action on its own behalf when there is no actual controversy involving the indemnitee").

Even setting that aside, Mitek has not demonstrated that [redacted]'s request had plausible merit. As the district court found, the [redacted], stating: "Mitek will [redacted] Mitek Products [redacted] Mitek hereunder [redacted]."

**Confidential Material Redacted**

Appx1652. On appeal, Mitek does not dispute that this exclusion applies. Mitek argues only that "Mitek's customers cannot modify or alter the underlying MiSnap source code." Op.Br.48. This has no connection to the [redacted], which broadly [redacted] uses of Mitek's software [redacted] Appx51. As explained above, and as Mitek does not dispute, Mitek source code cannot be used in an infringing bank deposit system unless it is [redacted] Appx55 ("It is undisputed" that infringement requires "integration with other components.'"); Appx1163 ("[T]he mobile deposit software involves code that Wells Fargo wrote on its own, true? A. Yes."); Appx558 ("Now, let's be clear, some of this is Mitek's software, but there's a lot of Wells Fargo's software in there, as well.").

Mitek argues that "it was improper for the district court to adjudicate the ultimate merits." Op.Br.48. However, this was not only proper, but mandated. In *Mitek I,* this Court specifically instructed the district court to analyze on remand "*the precise scope of the [Mitek's] indemnity agreements,*" as this "may bear heavily on the sufficiency of Mitek's indemnity-based interest in obtaining the requested declaratory judgment." *Mitek I*, 34 F.4th at 1346; *see also DataTern, Inc.*, 755 F.3d at 904. ("Appellees seek to broaden our precedent quite substantially by arguing that a customer request to indemnify ought to give rise to standing,

without regard, it appears, to the merit of the customer request. This cannot be.”). The district court properly followed the mandate and concluded that the “scope” of the sole indemnification agreement that any entity had invoked when Mitek filed its Complaint could not have plausibly covered USAA’s infringement suits.

### 2. Post-Complaint Indemnification Demands Do Not Establish Jurisdiction

The district court also correctly held that letters that Mitek allegedly received after its Complaint cannot establish jurisdiction. Appx 1721, Appx2014, Appx2174, Appx2177, Appx2238-2239. As noted above, post-complaint events cannot “create jurisdiction where none existed at the time of filing.” *Matthews Int’l Corp.*, 695 F.3d at 1331.

Even leaving aside this threshold defect, these letters could not support jurisdiction for at least three additional reasons. First, none of the letters are to entities to whom USAA had sent a letter. Second, like the Confidential Mitek Agreement [redacted] indemnification agreement, each of the underlying agreements contain applicable carve-outs. Appx52-53 (discussing [redacted] Confidential Mitek Agreement [redacted]). Third, most of the entities who corresponded with Mitek are not banks (much less banks who received letters from USAA), but “third-party financial services provider[s], who in turn [have] separate indemnification agreements with end-user banks.”

Appx56. As the district court explained, "Mitek has not come forward with any case law to suggest that such a broken chain of indemnification can create a reasonable likelihood of indemnification liability from the end-user to the manufacturer with which it is not in privity." *Id.* Indeed, these agreements have [redacted] Confidential Mitek Agreement [redacted]. *See, e.g.*, Appx1714 [redacted] Confidential Mitek Agreement [redacted]).

Mitek's Opening Brief does not address any of these defects. Instead, Mitek focuses almost entirely on an indemnification letter from Truist Bank, dated August 22, 2022, years *after* the Complaint. Mitek conceded below that this letter could not form the basis of jurisdiction:

> THE COURT: Of course, PNC and the case tried here and the case that's pending with Truist Bank really are four or five years after the fact from the time this complaint was filed.
> MR. MACK: Right. We're not using that supply -- you know, jurisdiction we believe existed at the time we filed our complaint. We're not using this -- this is just heightening our reasonable apprehension.

Appx2566-2567. Mitek thus expressly waived any argument that the Truist demand letter establishes jurisdiction.

Despite this, Mitek now attempts to resurrect the argument, asserting that

"Mitek entered into the agreement with Truist containing the indemnification provision well before the filing of its declaratory judgment action." Op.Br.49. But the mere existence of an indemnification agreement does not create jurisdiction. Rather, an actual controversy between the patent holder and the indemnitee must exist when the complaint is filed. *BP Chemicals*, 4 F.3d at 981 ("The agreement to defend or indemnify a third person does not provide the actual controversy whereby the defender or indemnitor may bring a declaratory action on its own behalf when there is no actual controversy involving the indemnitee."). Mitek does not contend there was any controversy between Truist and USAA when Mitek filed its Complaint in November of 2019, nor could it given that USAA had no sent Truist a letter at that time and the Truist suit was years later.

Regardless, the Truist indemnification agreement (like all of the agreements that Mitek provided on remand) also contains a carve-out for [redacted] Confidential Mitek Agreement Appx2244 (excluding [redacted] Confidential Mitek Agreement). This carve-out is particularly relevant because the only Patent-in-Suit in the Truist litigation (the '090 patent) requires "feedback information describing an instruction for satisfying the monitoring criterion." Appx1268. As explained above, banks have complete control of whether and what type of feedback is provided. Notably, the deadline for

Mitek to respond to Truist's letter passed over a year ago, Appx2238, and Mitek did not even respond to it, and Truist has not pursued any indemnity claim. Appx2234 (Mitek's acknowledgment that no responsive letter exists).

In sum, Mitek did not identify any indemnification request that could have established a controversy between Mitek and USAA at the time of the Complaint.

### 3. Post-Complaint Events Confirm That Mitek Is Not Obligated to Indemnify Any Bank That USAA Has Sued For Infringement

Post-complaint events further support the district court's conclusion. As discussed above, "[l]ater events may not create jurisdiction where none existed at the time of filing," *Matthews Int'l*, 695 F.3d at 1331 (Fed. Cir. 2012), but can extinguish jurisdiction, *Sosna,* 419 U.S. at 402. Wells Fargo, the only entity USAA had sued at the time of Mitek's Complaint, settled in 2021, and Mitek does not contend it ever incurred any liability in connection therewith. Indeed, Wells Fargo represented that [redacted] Appx1502, and never [redacted] Appx1211.

PNC similarly did not seek indemnification. Appx2566. Mitek contended that a third party, NCR, sent Mitek an indemnity request relating to the PNC suit. Appx1506. However, in addition to the lack of privity between PNC and Mitek noted by the district court, Mitek represented to the SEC that NCR's request was

baseless, and Mitek "does not believe it is obligated to indemnify NCR Corporation or end-users of NCR Corporation resulting from the patent infringement allegations by USAA." Appx1219. Mitek's admissions that it has no indemnity liability are highly relevant, particularly as SEC filings "are generally recognized as the most accurate and authoritative source of public information about a company." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

### C. The District Court Applied The Correct Standard

For all of the reasons explained above, the district court correctly concluded that, based on the record evidence, Mitek failed to plead and prove a substantial controversy between Mitek and USAA. Mitek has not satisfied the "high barrier" of showing that this finding was clearly erroneous. *City of Alexandria v. Brown*, 740 F.3d 339, 352 (5th Cir. 2014).

Remarkably, given the voluminous evidence detailed above, Mitek argues that the district court erred in concluding that USAA raised a factual challenge. Op.Br.15-18. This directly contradicts *Mitek I*, which observed (even before the additional evidence presented on remand):

> It appears that USAA took the steps required to mount a factual attack that entitled it to a resolution of at least some factual disputes, not just to a decision on the sufficiency of the complaint when combined with undisputed facts. See J.A. 262–67 (USAA's motion to dismiss, submitting evidence from Wells Fargo trial); J.A. 882–84 (USAA's reply, specifically asserting that USAA's motion was factual, not

facial); J.A. 957–1014 (argument to district court, discussing at length what was shown in the Wells Fargo trial).

*Mitek I*, 34 F.4th at 1344. The panel remanded so that the district court could conduct factual analysis based on this evidence. *Id.* This is exactly what the district court did in a detailed 62-page order, after the parties submitted dozens of additional exhibits and additional briefing and argument.

The record clearly establishes that USAA raised a factual challenge. To do so, USAA merely needed to submit evidence extraneous to the Complaint. *Eg., Superior MRI Servs., Inc. v. All. Healthcare Servs*., Inc., 778 F.3d 502, 504 (5th Cir. 2015) ("An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'"). For example, to rebut Mitek's assertion that it faced imminent risk of an infringement suit from USAA, USAA presented, among other things, (1) testimony from the Wells Fargo trial showing that suits were targeted at the bank, not Mitek; (2) Mitek's admission to the PTAB that USAA had never accused or threatened it regarding infringement; and (3) evidence including Mitek's admissions and testimony and argument from banks that infringement depends on customization by banks.

Similarly, regarding indemnification, USAA presented testimony from the Wells Fargo action showing [redacted] and Mitek's statements to the SEC that Mitek has no indemnification obligations. USAA also relied on Mitek's own letters, which confirm no banks who received letters from USAA

sought indemnity, and Mitek's agreements, each of which has applicable carve-outs precluding indemnification.

Mitek argues that these issues are not "factual" because it does not dispute the documents exist. However, it is well-established that, when a determination depends on drawing "[r]easonable inferences from . . . undisputed facts" the dispute is factual. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *See also Marshall v. Kimberly-Clark Corp.*, 625 F.2d 1300, 1303 (5th Cir. 1980) ("[T]here are competing reasonable inferences which may be drawn. The trier of fact must resolve these disputes."). Here, the district was uniquely positioned to draw inferences and resolve disputes regarding the nature of USAA's infringement claims and Mitek's indemnification obligations. The court reviewed the voluminous evidence submitted by the parties, and also presided over USAA's suits against Wells Fargo, PNC, and Truist. The district court was entitled to make factual findings, and those findings are reviewed for clear error. As detailed above, the district court did not err in its analysis, much less commit clear error.

## II. The District Court Did Not Abuse Its Discretion By Determining, As An Alternative Basis, That It Is Appropriate To Decline Jurisdiction

The district court's alternative finding that it would decline jurisdiction even assuming jurisdiction exists is a second, independent basis to affirm. The Declaratory Judgment Act grants district courts "unique and substantial discretion in deciding whether to declare the rights of [the] litigants." *Wilton v. Seven Falls*

*Co.*, 515 U.S. 277, 286 (1995). This is because "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* at 289. As *Mitek I* explained, "As long as a district court 'acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, [it] has broad discretion to refuse to entertain a declaratory judgment action." *Mitek I*, 34 F.4th at 1347 (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996)).

In its original order, the district court did not make detailed findings regarding discretionary denial. Accordingly, *Mitek I* remanded for the district court to perform further analysis. *Mitek I, Inc.*, 34 F.4th at 1346-47. On remand, the district court explained in detail, based on Mitek's own characterization of the proposed declaratory judgment action, the other record facts, and the district court's observations having overseen trials between USAA and competitor banks, why discretionary denial is warranted. Appx58-66. Mitek identifies no error, much less abuse of discretion, in the district court's thoughtful analysis of the massive inefficiency that Mitek's proposed suit would impose on the judicial system, USAA, and third parties.

#### 1. The Proposed Declaratory Judgment Action Would Be Extremely Unwieldy And Inefficient

Mitek seeks declaratory judgment that, among other things, it is not liable for indirect infringement and that its "customers' use of [] MiSnap and related

remote deposit technology . . . does not infringe." Appx91-93. As the district court explained, even attempting to adjudicate these issues would create an extremely complex and inefficient process.

Because "[t]he parties agree that USAA has never alleged that MiSnap meets every element of every asserted claim," Appx64, the question of indirect infringement would require an individualized inquiry into each potential direct infringer's conduct since "there can be no indirect infringement without direct infringement," *Limelight Networks, Inc. v. Akamai Techs., Inc*., 572 U.S. 915, 920 (2014). Further, Mitek specifically seeks a declaration as to whether its "customers' use of [] MiSnap. . . infringe[s]." According to Mitek, "[o]ver 6,400 financial institutions have licensed Mitek's mobile deposit technology." Appx1224, Appx34. Thus, adjudicating indirect infringement and customer infringement would require numerous mini-trials on whether and to what extent individual banks committed infringement. As the district court explained, this is unworkable: "as a practical matter, the Court sees no path by which Mitek can litigate this case without extensive involvement by end-user banks, either through third-party discovery or through joining additional parties." Appx64.

Moreover, induced infringement requires a finding that the alleged infringer "possessed specific intent to encourage another's infringement." *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1305 (Fed. Cir. 2002). As the district

court found, this would require additional individualized inquiries, including what Mitek knew about each customer's activities and when, and what instructions Mitek gave each customer:

> [W]ith Mitek as the sole allegedly infringing entity being party to the suit, investigation would still be required as to whether the end-user banks or third-party financial services providers are direct infringers, whether Mitek directed or encouraged some or all elements of such infringement, whether those entities modified the MiSnap software and, if so, whether such modification was made at the direction of Mitek's documentation, and more.

Appx64.

On appeal, Mitek essentially ignores this fundamental problem. Mitek does identify any error in the district court's analysis or any way that the scope of its proposed action could be limited consistent with the Declaratory Judgment Act and USAA's rights. Mitek offers only the conclusory statement that the action could focus on the "capability" of Mitek's software. Op.Br.53. As an initial matter, that would do nothing to resolve the alleged "controversy" identified in its Complaint—which expressly includes, according to the Complaint, Mitek's ***customer's liability***, and Mitek's ***indirect infringement liability***. Appx91-93.

Nor could the action be focused on a smaller number of issues consistent with the Declaratory Judgment Action and USAA's rights. First, it is well-settled that declaratory judgment cannot be used to obtain piecemeal adjudication of "issues" or "elements." *AbbVie Inc. v. MedImmune Ltd.*, 881 F.3d 1334, 1337-38

(Fed. Cir. 2018) (A plaintiff "may not use a declaratory-judgment action to obtain piecemeal adjudication" of individual issues or defenses). Second, USAA has the right, and obligation, to assert certain counterclaims against Mitek, which would necessarily not be limited to any specific sub-issue that Mitek prefers to focus on. Third, USAA also has the right to join end-user banks. Joinder is proper where (1) "any right to right to relief is asserted against the parties jointly" and (2) "questions of fact common to all defendants . . . will arise." 35 U.S.C. § 299. Indirect infringers are "jointly and severally liable with the direct infringer[s]," *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1361 (Fed. Cir. 2001), and "[i]t is clear that where defendants are alleged to be jointly liable, they may be joined under Rule 20 because the transaction-or-occurrence test is always satisfied." *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012).

The extreme complexity that would be required to litigate Mitek's proposed action is illustrated by the trials against Wells Fargo and PNC, which involved diverse and almost entirely non-overlapping issues. Even though both banks used Mitek software, as discussed in Section (I)(A)(3), one of PNC's implementations did not use autocapture. Not surprising, given that their implementations were different, Wells Fargo and PNC presented ***completely non-overlapping defenses***. Wells Fargo presented, in collaboration with Mitek, a "timing of capture" defense.

Appx2544-2546. PNC's defense did not focus on Mitek at all. PNC argued that its own hardware and software did not constitute an "image monitoring and capture module"—a different claim element. Appx2338. Clearly, even trying claims against the Wells Fargo and PNC systems in a single case would have been, at best, unwieldy. This problem would be multiplied exponentially by trying to somehow litigate in a single action the systems of the 6,400 entities identified in Mitek's Complaint. Appx520.[2]

Mitek does not dispute this, and indeed waived in the district court any argument that each customer system would involve the same issues. In opposing transfer from the Northern District of California, Mitek expressly represented that every customer system is different and requires separate analysis. Mitek represented that the Wells Fargo system is "entirely different" from other implementations, and that, "at a minimum, USAA's infringement contentions, the construction of the Patents-in-Suit, and the facts the jury will need to find will be unique to this case." Appx1594.

Determining damages would likewise require an analysis of the conduct banks, i.e., the alleged underlying direct infringers, yet further rendering the action

[2] Further, as the district court also noted, in each litigations between USAA and competitor banks, USAA asserts (non-overlapping) additional USAA patents that Mitek does not seek to include in its declaratory judgment suit, but would be asserted by USAA as part of its counterclaims. Appx48-49.

unwieldy. Mitek's Opening Brief assumes without explanation or authority that damages would consider only Mitek's activities or even be capped at an amount Mitek could pay. Op.Br.59n.14. But as this Court explained in *Lucent Technologies*, damages must "be correlated, in some respect, to the extent the infringing method is used by consumers." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009). Moreover, recovery "depends on what royalty reasonably would have resulted from negotiations where a willing licensor was aware that [the maker] would make and [the user] would use the [patented invention]." *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983). Here, this would turn on, among other things, which of Mitek's customers actually infringe, how often, and what value their use has. 35 U.S.C. § 284.

#### 2. Mitek's Proposed Declaratory Judgment Action Would Not Resolve Any Dispute Between USAA and Other Banks

In addition, Mitek's proposed declaratory judgment action would not actually resolve any dispute between USAA and competitor banks. *BP Chemicals*, 4 F.3d at 981 (affirming the district court's decision to decline to exercise declaratory judgment jurisdiction where the action "would not resolve all of the issues raised, since none of the licensees is party to this action."). For example, if Mitek prevailed in showing that its software does not infringe *as-sold*, or it did not *instruct* third parties to infringe, this would not resolve whether banks are directly infringing. As this Court recently explained, "res judicata [does] not bar a direct

infringement claim because induced and indirect infringement claims arise under different statutes and comprise different causes of action." *Inguran, LLC v. ABS Glob., Inc.*, 72 F.4th 1272, 1280 (Fed. Cir. 2023); *see also Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011) ("A court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions."). As the district court explained:

> [B]anks can, and indeed do, customize MiSnap to fit their own needs, whether that includes modification of the MiSnap software itself or combining the MiSnap software with software created by the bank or their third-party financial services providers. Therefore, a determination of whether a component of Mitek's software, sold as-is, infringes the Asserted Patents will have no bearing and no estoppel effect on whether a modified version of the same component is infringing.

Appx61. USAA is entitled to pursue damages against each jointly and severally liable infringer, until it has received full recovery for all infringement. *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001) ("Each joint tort-feasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee. Entry of judgment against one infringer does not automatically release other related infringers."); *SynQor, Inc. v. Cisco Sys., Inc.*, No. 2:14-CV-286, 2014 WL 12638157, *6 (E.D. Tex. Sept. 4, 2014) ("The payment of damages by the manufacturer does not automatically release the infringing product for free use.").

Mitek incorrectly contends that, upon a damages determination against Mitek, "exhaustion . . . would prevent USAA from seeking a recovery from

Mitek's customers." Op.Br.59.n14. This is wrong for several well-settled reasons. First, exhaustion only applies to "authorized" sales, and none of Mitek's sales were authorized by USAA. *Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292, 1304 (Fed. Cir. 2010) (reversing application of the first sale doctrine because sale was not authorized, and subsequent acquisition of rights did "not retroactively authorize the earlier sale"). Moreover, for an authorized sale of a component to exhaust the patentee's rights, the component must "substantially embod[y]" the patent, such that "(1) the only reasonable and intended use of the article is to practice the allegedly exhausted patent; and (2) the article embodies the essential or inventive features of the allegedly exhausted patent." *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1046 (Fed. Cir. 2015). As explained above in Section (I)(A)(3), *infra*, MiSnap has substantial non-infringing uses. Finally, as a practical matter, Mitek would not be capable of satisfying any substantial judgment, as its current market capitalization is less than the damages awarded to USAA for infringement. Appx1603.

#### 3. Mitek Could Have Intervened And Failed To Do So

The district court found that there is a superior alternative available to Mitek, i.e., intervention in any USAA infringement action that implicates its rights. District courts "may refuse declaratory relief where an alternative remedy is better or more effective." *Ford Motor Co. v. United States*, 811 F.3d 1371, 1380 (Fed.

Cir. 2016).

Mitek could have intervened in the Wells Fargo action, as the district court held. Intervention as a matter of right is "liberally construed" to permit intervention. *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)). Permissive intervention requires only that the intervener have "a claim or defense that shares with the main action a common question of law or fact," a standard would be easily met if Mitek's jurisdictional theories (that Mitek was implicitly accused of infringement or has an indemnity obligation) were true. Fed. R. Civ. P. 24(b)(1)(B). In fact, Mitek's counsel conceded that Mitek "could have permissively asked to intervene," arguing only that it did not so because Mitek did not "realize[] that MiSnap was so essential" until the eve of trial. Appx2539. The district court correctly rejected this as contrary to the record. Indeed, it is directly contradicted by Mitek's Complaint in this action, which alleges that USAA's June 2018 complaint in the Wells Fargo action (17 months before trial) "implicitly accused Mitek of encouraging and contributing to the infringement of each of the Patents-in-Suit." Appx83. Furthermore, Mitek signed a common interest agreement with Wells Fargo "on October 11, 2018—nearly 13 months before the trial in the Wells Fargo Case"—and collaborated with Wells Fargo throughout the case. Appx62.

Notably, even after the district court's 2020 order expressing that intervention was available, Mitek did not seek to intervene in the PNC/BBVA or Truist cases. None of the "disadvantages" to intervention that Mitek identifies on appeal come close to explaining why this would not be, as the district court found, a far preferred course to a massively unwieldly declaratory judgment action involving thousands of third parties. Mitek first argues that, if it intervened, it "would be bound by existing orders and deadlines." Op.Br.56. All cases have orders and deadlines, and Mitek like any other party could request changes to them if needed to avoid prejudice. Second, Mitek argues intervention would require it to waive venue. *Id.* This is facially irrelevant, as Mitek's declaratory judgment suit is in the same court as USAA's infringement suits. Finally, Mitek claims without support that intervention would expose it to "inordinate expenses," but fails to identify any reason that it would be more expensive to intervene on a targeted basis in one or two suits, each involving one entity, as opposing to broadly launching a declaratory suit to litigate the activities of thousands of additional entities (the vast majority of whom, as the district court noted, are highly unlikely ever to be sued). Appx61 ("the Court finds it incredibly unlikely that USAA plans to sue all 6,000 plus banks for infringement of the Asserted Patents when, in the last five years, it has only sued four of them.").

### 4. Mitek's Suit Was Brought For An Improper Purpose

For the reasons discussed above, Mitek's proposed suit will not achieve the objectives of the Declaratory Judgment act, but rather appears to have been brought with the motive of attempting to disrupt specific litigation between USAA and competitor banks. As Mitek's Opening Brief acknowledges (Op.Br.59-60), "the type of situation the Declaratory Judgment Act was intended to address" is where a patentee "attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. . . . Before the Act, competitors victimized by that were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue." *EMC Corp. v. Norand Corp., 89 F.3d* 807, 814 (Fed. Cir. 1996) (internal citations omitted). Here, USAA did not "refuse[] to grasp the nettle and sue." USAA brought suit against Wells Fargo in 2018, and twice since has brought suit against major competitors using its technology. Appx81-82. It is Mitek who strategically sat on its hands. Mitek chose to stand by until the Wells Fargo action had been pending for seventeen months. It was only when the Wells Fargo litigation was nearly complete that Mitek brought a declaratory judgment suit to try to re-litigate it in the Northern District of California. As Judge Chen held in transferring the case to the Texas court, in an order affirmed in *Mitek I*, Mitek's declaratory judgment action "smack[ed] of forum shopping." *Mitek Sys.*, 2020 WL 1922635, at *5.

Mitek's decision not to seek intervention, but instead wait until the Wells Fargo litigation was nearly complete to file a declaratory judgment suit, demonstrates that its actual goal was to seek a do-over of the Wells Fargo case. As noted above, Mitek had a common interest agreement with Wells Fargo and coordinated with Wells Fargo with respect to invalidity during the litigation. Appx62-63, Appx1537-1538. Wells Fargo in coordination with Mitek then made the strategic decision to forego their validity defenses and instead focus their case on a specific alleged defense of non-infringement (as discussed above, relating to the timing of "capture" in Wells Fargo's system). Appx1548, Appx1552 (final pretrial order listing invalidity and obviousness defenses); Appx1564-1570 (verdict form showing Wells Fargo did not present invalidity to the jury); Appx1178 (Mitek's corporate representative testifying that he "jointly prepared" with Wells Fargo for trial). As trial in that action was concluding and it became apparent that Wells Fargo would not prevail, Mitek filed a declaratory judgment action to ***re-*** present the same non-infringement argument and the same supposedly "compelling…invalidity defenses" it developed with Wells Fargo. Appx1104. This was a blatant attempt to have multiple bites at the same apple.

The Declaratory Judgment Act is not a tool for such procedural gamesmanship. *See, e.g., Wilton v. Seven Falls Co.*, 41 F.3d 934, 935n.4 (5th Cir. 1994), *aff'd*, 515 U.S. 277 (1995) (not an abuse of discretion to refuse to "reward

[plaintiff's] attempts to forum shop."); *New Orleans Pub. Serv., Inc. v. Majoue*, 802 F.2d 166, 168 (5th Cir. 1986) (Forum shopping is contrary to "[t]he wholesome purposes of declaratory acts.") (internal citations omitted).

The Seventh Circuit's decision in *TRW, Inc. v. Ellipse Corp*., is directly on point:

> [I]n this case, it was the manufacturer, not the patent owner, who studiously avoided a legal confrontation by limiting his participation solely to observing the earlier proceedings and to filing amicus curiae briefs. It would be perverse to permit the Declaratory Judgment Act, designed to effectuate lawsuits, to be manipulated into a device allowing the avoidance of real legal involvement in an earlier pending suit between the manufacturer's customer and the patent owner, while permitting the manufacturer subsequently to collaterally attack aspects of the decision unfavorable to its position. Moreover, such action to obtain a judgment in order to reverse the prior court decision smacks of a race for res judicata, a variant of the procedural fencing which this court abhorred in *Freundt*.

495 F.2d 314, 322 (7th Cir. 1974). The situation here is identical—Mitek, the manufacturer, avoided intervention in the Wells Fargo litigation, and now attempts to collaterally attack USAA's other litigations.

It was clearly not an abuse of discretion for the district court decline to exercise jurisdiction under these circumstances. Any one of the reasons discussed above in Sections (II)(1)-(4) would be sufficient cause to exercise discretion. The district court was uniquely situated to appreciate these issues, having overseen several litigations between USAA and banks who implement mobile deposit, and thus having a deep appreciation for the litigation strategies of Mitek, USAA, banks

who design and offer mobile deposit systems, the variation between different banks' systems, and the complexity involved in taking discovery from or joining banks to Mitek's proposed action.

**CONCLUSION**

For reasons explained above, the district court's decision should be affirmed.

Dated: December 14, 2023

Respectfully submitted,

IRELL & MANELLA LLP

By: */s/ Lisa S. Glasser*
Lisa S. Glasser

Counsel for Defendant-Appellee,
*United Services Automobile Association*

## CERTIFICATE OF COMPLIANCE

I hereby certify the foregoing motion contains 13,935 words in compliance with Federal Rule of Appellate Procedure 27(d)(2).

Dated: December 14, 2023

Respectfully submitted,

IRELL & MANELLA LLP

By: */s/ Michael D. Harbour*
Michael D. Harbour

Counsel for Defendant-Appellee,
*UNITED SERVICES AUTOMOBILE ASSOCIATION*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**CERTIFICATE OF SERVICE**

I certify that I served a copy of the foregoing document on counsel of record for the parties on December 14, 2023 by email.

| | |
|---|---|
| Michael D. Harbour | */s/ Michael D. Harbour* |
| Name of Counsel | Signature of Counsel |


| | |
|---|---|
| Law Firm | Irell & Manella LLP |
| Address | 1800 Avenue of the Stars, Suite 900 |
| City, State, Zip | Los Angeles, California 90667-4276 |
| Telephone Number | (310) 277-1010 |
| Fax Number | (310) 203-7199 |
| E-Mail Address | mharbour@irell.com |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2023-1687

**Short Case Caption:** Mitek Systems, Inc. v. United Services Automobile

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 112 number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☑ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 12/14/2023

Signature: /s/ Michael D. Harbour

Name: Michael D. Harbour