**Docket No. 2023-1687**

*In the*

# United States Court of Appeals

*for the*

# Federal Circuit

MITEK SYSTEMS, INC.,

*Plaintiff-Appellant,*

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION,

*Defendant-Appellee.*

*Appeal from the United States District Court for the Eastern District of Texas*
*Case No. 2:20-cv-00115-JRG* · Judge Rodney Gilstrap

# REPLY BRIEF OF PLAINTIFF-APPELLANT MITEK SYSTEMS, INC.

DAVID EISEMAN
BRIAN E. MACK
JONATHAN TSE
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600 Telephone
davideiseman@quinnemanuel.com
brianmack@quinnemanuel.com
jonathantse@quinnemanuel.com

*Attorneys for Plaintiff-Appellant, Mitek Systems, Inc.*

December 29, 2023

COUNSEL PRESS · (213) 680-2300 PRINTED ON RECYCLED PAPER

# REPRESENTATIVE PATENT CLAIM

Claim 1 of the ’571 Patent purports to claim:

A non-transitory computer-readable medium comprising computer-readable instructions for depositing a check that, when executed by a processor, cause the processor to:

> monitor an image of the check in a field of view of a camera of a mobile device with respect to a monitoring criterion using an image monitoring and capture module of the mobile device;
>
> capture the image of the check with the camera when the image of the check passes the monitoring criterion; and
>
> provide the image of the check from the camera to a depository via a communication pathway between the mobile device and the depository.

Appx273.

# TABLE OF CONTENTS

**Page**

REPRESENTATIVE PATENT CLAIM ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. THE DISTRICT COURT'S DISMISSAL OF MITEK'S SUIT FOR LACK OF SUBJECT MATTER JURISDICTION WARRANTS REVERSAL ........ 2

A. The District Court Erred In Ruling That Mitek Had Not Established A Reasonable Potential Of Suit For Infringement ........ 2

1. The District Court's Reliance On Mitek's Statement To The PTAB Was In Error ........ 3

2. The District Court Committed Legal Error In Finding A Lack of Reasonable Potential For A Direct Infringement Claim ........ 5

3. The District Court Also Erred In Determining That Mitek Had Failed To Establish Reasonable Potential For An Indirect Infringement Claim ........ 8

4. USAA's Customer Suits Bolster Mitek's Standing For Its Infringement Claims ........ 13

B. The District Court Erred In Determining that Mitek Had Not Established A Reasonable Potential Of Suit For Indemnification Liability ........ 16

1. The District Court Erred In Finding That Mitek Did Not Have Standing For Indemnification Liability At The Time Of Its Complaint ........ 17

2. The Post-Complaint Indemnification Requests Mitek Received Further Strengthen Mitek's Standing ........ 19

3. None Of The Post-Complaint Events Identified By USAA Undercut The Reasonable Potential For Indemnification Liability ........................................................21

C. The District Court Erred In Applying The Wrong Legal Standards ........................................................................................21

II. THE DISTRICT COURT ABUSED ITS DISCRETION BY DECLINING TO ACCEPT JURISDICTION OVER MITEK'S DECLARATORY JUDGMENT ACTION..................................................23

A. Mitek's Declaratory Judgment Action Would Not Be Unwieldy Or Inefficient ...........................................................................24

B. The Outcome Of Mitek's Declaratory Judgment Action Would Resolve MiSnap's Infringement Issue For Mitek's Customers..........27

C. The District Court Abused Its Discretion In Finding That Intervention Supported Declining Jurisdiction ..................................30

D. Mitek's Declaratory Judgment Action Is The Only Avenue For Mitek To Resolve The Alleged Infringement Of The Patents-in-Suit.........................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AbbVie Inc. v. MedImmune Ltd.*
881 F.3d 1334 (Fed. Cir. 2018) ....................25

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
692 F.3d 1301 (Fed. Cir. 2012) ....................11

*Allied Min. Prod., Inc. v. Osmi, Inc.*
870 F.3d 1337 (Fed. Cir. 2017) ....................14

*Arris Grp. Inc. v. British Telecomms. PLC*,
639 F.3d 1368 (Fed. Cir. 2011) ....................12

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988) ....................4, 7, 16

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................22

*In re Bill of Lading Transmission and Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ....................5, 10

*BP Chemicals Ltd. v. Union Carbide Corp.*,
4 F.3d 975 (Fed. Cir. 1993) ....................3, 16, 17, 27

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) ....................29

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015) ....................7

*Cisco Sys., Inc. v. Alberta Telecomms. Research. Ctr.*,
538 F. App'x 894 (Fed. Cir. 2013) ....................10

*Elecs. for Imaging, Inc. v. Coyle*
394 F.3d 1341 (Fed. Cir. 2005) ....................15

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ....................8

*Foster v. Am. Mach. & Foundry Co.*
492 F.2d 1317 (2d Cir. 1974) ....29

*In re Google, Inc.*,
588 F. App'x 988 (Fed. Cir. 2014) ....26

*Haverkamp v. Linthicum*,
6 F.4th 662 (5th Cir. 2021) ....23

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed. Cir. 2009) ....2, 23

*Honeywell Int'l, Inc. v. United States*
609 F.3d 1292 (Fed. Cir. 2010) ....29

*Hunt v. Cromartie*,
526 U.S. 541 (1999)....23

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ....10

*Inguran, LLC v. ABS Glob., Inc.*,
72 F.4th 1272 (Fed. Cir. 2023) ....28

*INVT SPE LLC v. Int'l Trade Comm'n*,
46 F.4th 1361 (Fed. Cir. 2022) ....8

*JVC Kenwood Corp. v. Nero, Inc.*,
797 F.3d 1039 (Fed. Cir. 2015) ....29, 30

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ....28

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....26

*Marshall v. Kimberly-Clark Corp.*,
625 F.2d 1300 (5th Cir. 1980) ....23

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....3

*MercExchange, LLC v. eBay, Inc.*,
401 F.3d 1323 (Fed. Cir. 2005) ....................11

*Microchip Tech. Inc. v. Chamberlain Grp., Inc.*
441 F.3d 936 (Fed. Cir. 2006) ....................15, 16

*Micron v. Mosaid*,
518 F.3d 897 (Fed. Cir. 2008) ....................14

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014) ....................3, 11, 12, 14

*Microsoft Corp. v. SynKloud Techs.*
484 F. Supp. 3d 171, 185 (D. Del. 2020) ....................12

*Minn. Min. and Mfg. Co. v. Norton Co.*,
929 F.2d 670 (Fed. Cir. 1991) ....................23

*Mitek Sys., Inc. v. United Servs. Automobile Assoc.*,
34 F.4th 1334 (Fed. Cir. 2022) ....................8, 17, 21

*Montez v. Dep't of Navy*,
392 F.3d 147 (5th Cir. 2004) ....................22

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ....................5, 6, 9, 19

*NetFuel, Inc. v. Cisco Sys. Inc.*,
438 F. Supp. 3d 1031 (N.D. Cal. 2020)....................8

*In re Nintendo of Am., Inc.*,
756 F.3d 1363 (Fed. Cir. 2014) ....................14, 26

*Oaxaca v. Roscoe*,
641 F.2d 386 (5th Cir. 1981) ....................21

*Prasco, LLC v. Medicis Pharm. Corp.*
537 F.3d 1329 (Fed. Cir. 2008) ....................7

*Shockley v. Arcan, Inc.*,
248 F.3d 1349 (Fed. Cir. 2001) ....................28

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) .......... 28

*In re Southern Recycling, L.L.C.*,
982 F.3d 374 (5th Cir. 2020) .......... 3

*Stickle v. Heublein, Inc.*,
716 F.2d 1550 (Fed. Cir. 1983) .......... 26, 27

*SynQor, Inc. v. Cisco Sys., Inc.*,
No. 2:14-CV-286, 2014 WL 12638157 (E.D. Tex. Sept. 4, 2014) .......... 29

*Teva Pharms. USA, Inc. v. Pfizer, Inc.*
395 F.3d 1324 (Fed. Cir. 2005) .......... 4

*Tex. Adv. Optoelec. Sols., Inc. v. Renesas Elecs. Am., Inc.*,
895 F.3d 1304 (Fed. Cir. 2018) .......... 8

*Transclean v. Jiffy Lube*,
474 F.3d 1298 (Fed. Cir. 2007) .......... 28

*TRW, Inc. v. Ellipse Corp*.
495 F.2d 314 (7th Cir. 1974) .......... 31

**Other Authorities**

Fed. R. Civ. P. 12 .......... 19

Fed. R. Civ. P. 19 .......... 26

Fed. R. Civ. P. 20(a)(1) .......... 25

Fed. R. Civ. P. 21 .......... 26

## INTRODUCTION

Mitek has been attempting to clear the air over its remote check deposit software for over four years after it filed this declaratory judgment action on November 1, 2019. In view of a newly expanded record, Mitek has established that USAA's affirmative actions create an objectively reasonable potential for direct, induced, and contributory infringement claims and indemnification liability—any of which is sufficient for standing. The district court's refusal to grant Mitek its day in court is predicated on its application of the wrong legal standards and reliance on legally irrelevant facts. The harm to Mitek and its business is manifest. Not only is USAA dragging Mitek into multiple, serial litigations to defend its software, USAA's actions have also caused Mitek's customers to send indemnification demands to Mitek and have cast a cloud over Mitek's business and its ability to license new customers and keep existing customers. The facts of this case, including USAA's vexatious litigation campaign against numerous Mitek customers for using Mitek's software, make it ideal for resolution by declaratory judgment.

None of USAA's attempts to justify the district court's legally erroneous findings withstand scrutiny. Nor has USAA adequately explained why the district court did not abuse its discretion in declining jurisdiction. USAA also fails to explain why the district court's conclusion that intervention was a better alternative

than a declaratory judgment action was correct, or even that Mitek would have been able to intervene.

## ARGUMENT

### I. THE DISTRICT COURT'S DISMISSAL OF MITEK'S SUIT FOR LACK OF SUBJECT MATTER JURISDICTION WARRANTS REVERSAL

USAA fails to rebut Mitek's showing that the district court erred in dismissing Mitek's declaratory judgment action. Reversal of the district court's order is therefore required.

#### A. The District Court Erred In Ruling That Mitek Had Not Established A Reasonable Potential Of Suit For Infringement

USAA argues that Mitek has not shown "a reasonable possibility—at the time of the Complaint or at present—that USAA both could and would sue Mitek." Doc. No. 28 ("Resp.Br.") 13-14. USAA, however, ignores the plethora of its own affirmative acts—its letter writing campaign to Mitek's customers (Doc. No. 13 ("Op.Br.") 8); its serial lawsuits against Wells Fargo, PNC, BBVA, and Truist (Op.Br.8-11); its subpoenas directed to Mitek as a third party for MiSnap documents, source code, and deposition testimony (Op.Br.8-11, 47); the centrality of MiSnap to its infringement theories (Op.Br.8-11, 40-43, 46-47); and its refusal to provide Mitek with a covenant not to sue (Op.Br.31-32; Appx2559-2560)—that have put a cloud over MiSnap and can be "reasonably inferred as demonstrating intent to enforce a patent." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir.

2009); *see also BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 979 (Fed. Cir. 1993) ("[I]t is the ***objective words and actions of the patentee that are controlling***.") (emphasis added); *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 907 (Fed. Cir. 2014) ("[A] patentee's ***aggressive enforcement strategy***…may also support jurisdiction.") (emphasis added).

USAA also contends that the district court's "analy[sis] [of] the elements of both direct and indirect infringement" should be reviewed under the clear error standard, which is wrong as a matter of law. Resp.Br.11, 13. Since none of the alleged factual disputes USAA identified are legitimate (*see infra*, Argument, § I.C), this Court should review any alleged dispute under the *de novo* standard. *In re Southern Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020). But even if USAA were correct, the district court committed clear error because it disregarded several legally dispositive facts and inappropriately relied on legally irrelevant ones.

**1. The District Court's Reliance On Mitek's Statement To The PTAB Was In Error**

USAA fails to explain why Mitek's statements to the PTAB are legally relevant to standing. Resp.Br.14-16. Aside from Mitek's statement to the PTAB that USAA "has never accused or even threated Mitek of infringement" being undisputed, express threats are not required post-*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007) (Op.Br.24-27), and direct communications

between the parties are not required for standing even under the stricter reasonable apprehension standard. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) ("[A] reasonable apprehension may be found ***in the absence of any communication from defendant to plaintiff***.") (emphasis added). In any event, USAA has now expressly threatened Mitek with additional counterclaims and patent assertions in its own briefing. *See infra*, Argument, § II.A.

Nor has USAA explained why it was proper for the district court to construe Mitek's statement to the PTAB to also mean that USAA has not made any "implicit" accusations against Mitek. Resp.Br.14-16. The record evidence demonstrates that USAA identified MiSnap in its customer suit complaints and alleged that MiSnap satisfied a majority of the asserted limitations in its trial demonstratives. Appx145-147, Appx738, Appx752, Appx771-775, Appx795, Appx1905, Appx1910-1911, Appx1923-1924, Appx2020; Op.Br.41-42. Accordingly, this case is dissimilar to *Teva Pharms. USA, Inc. v. Pfizer, Inc.*, where the patentee indicated that it did "not wish to expose the [patents-in-suit] to the possibility of a noninfringement or invalidity determination." 395 F.3d 1324, 1334 (Fed. Cir. 2005).

Finally, Mitek's statement to the PTAB that MiSnap itself does not practice all claim elements (Resp.Br.15) is also undisputed and does not otherwise preclude the reasonable potential for direct infringement (based at least on Mitek's testing of the "complete mobile deposit system" (Op.Br.33-37)) or indirect infringement

(based on Mitek providing documentation to its customers encouraging the use of MiSnap features and USAA's allegations that MiSnap forms a material component of a customer's banking application (Op.Br.37-47)).

### 2. The District Court Committed Legal Error In Finding A Lack of Reasonable Potential For A Direct Infringement Claim

USAA has not rebutted Mitek's showing that the district court erred in holding that Mitek had not established a reasonable potential of suit for direct infringement. USAA initially argues that MiSnap itself is not able to satisfy every limitation of the asserted claims without "additional technology," but this is legally irrelevant. Resp.Br.17; *In re Bill of Lading Transmission and Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012) ("[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met."); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) ("The plausibility standard…simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence to support the plaintiff's allegations.") (citation omitted). Critically, USAA ignores Mitek's uncontroverted allegations regarding Mitek's testing of the "complete mobile deposit system" (Appx1645), which includes the "processor" in claim 1 of the '090 patent that USAA contends is missing. Resp.Br.16-17.

Next, USAA argues for the first time on appeal that Mitek cannot provide the claimed "depository" that "exclusively uses the bank's own internal system and code." Resp.Br.17. This argument, however, boils down to a disagreement over claim construction—"a dispute not suitable for resolution on a motion to dismiss." *Nalco*, 883 F.3d at 1349. Further, USAA's interpretation of the scope of the term "depository" to mean "exclusively us[ing] the bank's internal system and code" (Resp.Br.17, 19-20), is unsupported by the specification, which explains that "[a] depository 204…is not limited to just banks" and may be "a third party." Appx206 at 5:49-55.

Realizing that the district court erred in failing to consider Mitek's uncontroverted allegations as true, USAA attempts to launch a facial attack, which fails to withstand scrutiny. ***First***, contrary to USAA's allegation (Resp.Br.18-19), Mitek has adequately pled direct infringement in its Complaint. There, Mitek pled that it had "a real and substantial apprehension of imminent litigation between Mitek and USAA for ***direct infringement***…of the Patents-in-Suit" and "Mitek and all of its MiSnap™ customers are presently faced with a substantial risk of litigation by USAA for allegedly infringing, either ***directly*** or indirectly, the [patents-in-suit]." Appx83, Appx88 (emphasis added).

***Second***, USAA contends that it was not aware of Mitek's testing (Resp.Br.19), which is irrelevant even under the stricter "reasonable apprehension"

standard. *Arrowhead*, 846 F.2d at 738 ("Under the law, a court may find a clear basis for a reasonable apprehension in all the circumstances, ***even when a patentee first learns of plaintiff's conduct upon receipt of the complaint***.") (emphasis added). The websites Mitek referenced for the Mobile Deposit Server merely bolster the public nature and plausibility of Mitek's testing of the "complete mobile deposit system." Op.Br.35n.6.

***Third***, USAA advances a new argument not raised below, *i.e.*, Mitek failed to show that it performed any testing of the "complete mobile deposit system" before filing its Complaint. Resp.Br.19-20. This argument, however, is belied by the uncontroverted evidence that "Mitek tests each version of MiSnap SDK before each release to minimize any bugs or incompatibilities." Appx1645.

***Fourth***, USAA is incorrect that it lacked motivation to file suit directly against Mitek because no harm can result from Mitek's testing. Resp.Br.21; *see, e.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1294-95, 1305, 1309-11 (Fed. Cir. 2015) (affirming royalty awards of over $1 billion based on, *inter alia*, design and testing of products in California). Unlike in *Prasco, LLC v. Medicis Pharm. Corp.*, where the patentee "ha[d] not…asserted any rights to [the declaratory judgment plaintiffs' product], nor…taken any actions which imply such claims[,]" 537 F.3d 1329, 1340 (Fed. Cir. 2008), USAA engaged in a plethora of affirmative acts accusing MiSnap of infringing the patents-in-suit. *See supra*, Argument, § I.A.

### 3. The District Court Also Erred In Determining That Mitek Had Failed To Establish Reasonable Potential For An Indirect Infringement Claim

USAA also fails to demonstrate why the district court did not commit legal error in holding that Mitek lacked standing based on the reasonable potential for an indirect infringement claim. Like the district court, USAA fails to heed this Court's prior warning that "the reference [to customization] does not show that, without the customer's choices, Mitek's product itself is not within the claim coverage." *Mitek Sys., Inc. v. United Servs. Automobile Assoc.*, 34 F.4th 1334, 1343 (Fed. Cir. 2022) ("*Mitek I*"). USAA does not dispute that the patents-in-suit all involve system and computer-readable medium claims and that Mitek's customers are "only activating means that are ***already present in the underlying software***." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 12005 (Fed. Cir. 2010) (emphasis in original) (citation omitted); *Tex. Adv. Optoelec. Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1327 (Fed. Cir. 2018) ("Although infringement of the apparatus claims requires that [the accused] products have the ability to perform in Mode 3, infringement ***does not require actual use*** of [the accused] products in Mode 3.") (emphasis added); *see also* Appx1644. USAA also fails to address, much less distinguish, *NetFuel, Inc. v. Cisco Sys. Inc.*, 438 F. Supp. 3d 1031, 1037-38 (N.D. Cal. 2020) and *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1372-74 (Fed. Cir. 2022), both of which confirm standing is appropriate here.

**Contributory infringement:** USAA fails to explain (Resp.Br.25-27) why the district court was correct in overlooking Mitek's uncontroverted allegations (that must be taken as true) directly related to contributory infringement, including that "USAA…alleged in the Wells Fargo lawsuit that the accused Mitek technology being used by Wells Fargo has no substantial non-infringing uses" (Appx83, ¶ 12); "Mitek primarily developed MiSnap" for the auto-capture feature (Appx1644, ¶ 5); MiSnap is a material component of the banking applications (Op.Br.37-47); and Mitek's extensive involvement in the customer suits (Op.Br.40-43).

Further, USAA makes no effort to explain why it was proper for the district court to credit USAA's unsupported allegations, *see* Appx46 ("USAA has *expressly* said the opposite—*i.e.*, that MiSnap has several substantial non-infringing uses.") (emphasis in original), over Mitek's uncontroverted allegations above that must be taken as true. Indeed, this Court in *Nalco* previously found that the district court "***must presume***" allegations that the product at issue "has no substantial noninfringing uses" "***are true*** at the pleading stage" and that any dispute with such allegations "is a factual inquiry not suitable for resolution on a motion to dismiss." 883 F.3d at 1357 (emphasis added).

USAA also contends that certain alleged non-infringing uses are "substantial" without any support. Resp.Br.26. Wells Fargo's 94% usage rate and PNC's usage of auto-capture as default for four years until it was sued by USAA actually support

Mitek's reasonable potential for a contributory infringement claim. Resp.Br.23, 26-27. That "some actual banks have used Mitek's software while avoiding those particular patents" (Resp.Br.27) ignores the proper analysis predicated on MiSnap's capabilities (Op.Br.18-24) and does not otherwise establish whether such use is "substantial." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010) (analyzing "the [non-infringing] use's frequency, but also the use's practicality, the invention's intended purpose, and the intended market"). Contrary to USAA's allegations, MiSnap is similar to the custom XML editor in *i4i* that was "designed and marketed" for the XML community. *Id.* at 851. And unlike in *Cisco Sys., Inc. v. Alberta Telecomms. Research. Ctr.*, 538 F. App'x 894, 897-98 (Fed. Cir. 2013), the parties here ***do*** dispute whether MiSnap has substantial non-infringing uses.

**Induced infringement:** USAA also fails to show why the district court's determination that Mitek lacked standing for an induced infringement claim does not warrant reversal. ***First***, USAA argues that it "has never alleged…that Mitek specifically encouraged Wells Fargo (or any other bank) to practice all of the limitations of any asserted patent" (Resp.Br.28), but that is not required at this stage in litigation. This Court in *In re Bill Lading* held that for an induced infringement claim, a plaintiff is not required to "plead facts establishing that each element of an asserted claim is met" and "need not even identify which claims it asserts are being infringed." 681 F.3d at 1335. Tellingly, USAA fails to explain why the MiSnap

guides, manuals, and instructions that Mitek provides to customers are insufficient to establish a "reasonable potential" for an induced infringement claim. Op.Br.42-43 (citing Appx1622, Appx1645, ¶ 9, Appx1727-1932, Appx2358-2401).

Both of USAA's cited cases, *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) and *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323 (Fed. Cir. 2005), are inapplicable because they stand for the unremarkable proposition that "the alleged inducer [must] ha[ve] knowledge of the infringing acts," *MercExchange*, 401 F.3d at 1332, which is a reasonable inference here given, *inter alia*, that Mitek supplies both the software and the technical documentation required to use and configure the software. Appx1643-1646, Appx2359-2401.

***Second***, USAA emphasizes the district court's holding that USAA has "*never* cited to Mitek documentation in its claim charts as evidence of infringement of *every* element of every asserted claim." Resp.Br.28-29 (emphasis in original). But reliance on Mitek documentation for every claim element is not required. *DataTern*, 755 F.3d at 905 (only requiring reliance on some party documentation). Moreover, USAA never submitted any of its infringement contentions or infringement expert reports from any of the customer suits to put that fact in dispute so Mitek's allegations regarding inducement must be accepted as true.

***Third***, USAA attempts to now trivialize its reliance on that documentation to "a sub-part of one claim limitation." Resp.Br.29. But USAA relied on Mitek's

documentation at the *Wells Fargo* and *PNC* trials to show that MiSnap satisfied a majority of the asserted limitations. *See supra*, Argument, § I.A.1. In *Microsoft Corp. v. SynKloud Techs., LLC*, the court found an actual controversy for induced infringement based on similar evidence. 484 F. Supp. 3d 171, 185 (D. Del. 2020) (referring to claim charts that "incorporate Microsoft-provided instructions on how to use" the allegedly infringing component).

***Fourth***, USAA's reliance on *DataTern* and *Arris Grp. Inc. v. British Telecomms. PLC*, 639 F.3d 1368 (Fed. Cir. 2011) is misguided. Resp.Br.29-31. In contrast to USAA's extensive reliance on Mitek's documents, source code, and deposition testimony for its infringement theories, the key point in *DataTern* was whether the patentee relied on ***any*** documentation from the declaratory judgment plaintiff in its claim charts. 755 F.3d at 905 (finding no controversy for certain patents based on claim charts that relied exclusively on third-party documents and no Microsoft documents). USAA also stretches *Arris* too far, as USAA fails to identify any holding in *Arris* that requires USAA to have relied on Mitek documents for every element in order for Mitek to establish standing for an induced infringement claim. Resp.Br.30-31.

### 4. USAA's Customer Suits Bolster Mitek's Standing For Its Infringement Claims

Contrary to USAA's allegation, USAA's customer suits actually strengthen Mitek's standing for its infringement claims. ***First***, USAA contends that "Mitek has never alleged that it incurred any liability relating to the Patents-in-Suit" since USAA started its letter-writing campaign six years ago. Resp.Br.31. This is both wrong and irrelevant. Mitek has incurred liability, including legal expenses, to defend itself and comply with each of USAA's serial subpoenas in each of the customer suits, including after the Wells Fargo settlement. In any event, USAA has not cited to any authority requiring Mitek to incur liability in order to establish standing.

***Second***, USAA argues that the *PNC* and *Truist* lawsuits "similarly confirm the absence of jurisdiction." Resp.Br.32. But it is undisputed that USAA has continued to assert at least a subset of the patents-in-suit against Mitek's customers, including PNC, BBVA, and Truist, after the Wells Fargo settlement—meaning USAA's actions after the *Wells Fargo* trial have only strengthened Mitek's standing.

***Third***, USAA contends that there is an "absence of an imminent controversy between USAA and Mitek" because USAA has only sued "direct competitor banks." Resp.Br.32-33. USAA, however, overlooks its affirmative acts against Mitek and its customers that have already put a cloud over MiSnap. *See supra*, Argument, §

I.A. Unlike in *DataTern*, USAA has not provided any "assur[ance] … that it did not intend to sue" Mitek, and has relied on MiSnap documents that encourage the use of the features at issue. 755 F.3d at 906-07. *Allied Min. Prod., Inc. v. Osmi, Inc.* is distinguishable at least because USAA has subpoenaed Mitek in each customer suit for MiSnap documents, source code, and deposition testimony to establish infringement. 870 F.3d 1337, 1339-40 (Fed. Cir. 2017).

***Fourth***, USAA attempts to justify what the district court perceived as Mitek's "real motivation" to "derail[] USAA's litigation strategy" against banks. Resp.Br.33-34. But Mitek's actual motivation for filing suit is to finally receive its day in court with respect to the alleged infringement of MiSnap, which is aligned with the objectives of the Act and customer-suit exception. *See, e.g.*, *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) (stating that customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination"). That the district court or USAA may discern some other purported motivations by Mitek for filing suit is irrelevant.

***Fifth***, USAA fails to explain why the district court did not err in applying the stricter "reasonable apprehension" standard than required by law. *Micron v. Mosaid*, 518 F.3d 897, 899 (Fed. Cir. 2008) ("Because the district court relied on a doctrine rejected by the United States Supreme Court in *MedImmune*, this court reverses and remands."). Notably, USAA cannot dispute that the district court improperly

confined its analysis to the stricter "reasonable apprehension" standard, as the district court's order is replete with references only to this standard. *See* Appx39-59.

USAA instead attempts to blame Mitek for the district court's legal error by asserting that "reasonable apprehension" was the "sole theory" Mitek pursued post-remand. Resp.Br.33-34. Not so. USAA's new argument is flatly refuted by Mitek's Complaint citing the "real and substantial" requirement (Appx83, ¶ 12) and Mitek's repeated references to a ***reasonable potential*** for an infringement claim and indemnification liability in its post-remand briefing. Appx1611-1612, Appx1617-1632, Appx1639, Appx2220-2229, Appx2298-2299, Appx2302-2306, Appx2341-2350.

***Sixth***, USAA also fails to explain why it was proper for the district court to rely on Mitek's statements to the PTAB and SEC, which are legally irrelevant. *See supra*, Argument, § I.A.1; Op.Br.48-49. Critically, USAA fails to address, much less distinguish, the holding in *Elecs. for Imaging, Inc. v. Coyle*, that a declaratory judgment plaintiff's subjective confidence in its legal position is unrelated to "'[u]ncertainty' in the context of the [Declaratory Judgment] Act." 394 F.3d 1341, 1346-47 (Fed. Cir. 2005). In contrast to *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, USAA has not provided a covenant not to sue to Mitek and Mitek never represented that it believed there was "patent peace" between itself and USAA. 441

F.3d 936, 942 (Fed. Cir. 2006). And unlike the patentee in *BP Chemicals*, USAA has not "repeatedly expressed [its] desire to resolve amicably any problems that might arise, in discussion with [Mitek] as well as with potential licensees." 4 F.3d at 980.

***Finally***, USAA argues that its refusal to grant Mitek a covenant not to sue does not establish standing, yet does not contest that its refusal is ***relevant*** to the standing inquiry. Resp.Br.35-36; Op.Br.31-32 (citing USAA's express reservation of right to sue Mitek at the dismissal hearing). Nor is USAA's argument that it "never communicated with Mitek at all, much less repeatedly communicated accusations of infringement" (Resp.Br.36) relevant to standing (*Arrowhead*, 846 F.2d at 736) or correct based on USAA's serial subpoenas on Mitek. *See supra*, Argument, § I.A.

### B. The District Court Erred In Determining that Mitek Had Not Established A Reasonable Potential Of Suit For Indemnification Liability

USAA fails to show why the district court did not err in finding that Mitek had not established standing based on the reasonable potential for indemnification liability. Therefore, this Court should reverse the district court's order on this basis as well.

#### 1. The District Court Erred In Finding That Mitek Did Not Have Standing For Indemnification Liability At The Time Of Its Complaint

USAA argues that "Mitek had not received any indemnification demands from banks who received letters from USAA at the time of its Complaint," (Resp.Br.37-38) but that is not required as a matter of law. In contrast to *BP Chemicals*, 4 F.3d at 981, this Court has already determined that there exists a "case or controversy" between USAA and the entities that received its letters as part of USAA's letter-writing campaign. *Mitek I*, 34 F.4th at 1344-46. Upon remand, Mitek has provided numerous indemnification agreements it entered into *before* filing its Complaint as well as an exemplary indemnity request it received pre-Complaint that expressly identified that "Q2 and several other Jack Henry customers have received the attached letter from Epicenter Law, P.C.," USAA's patent licensing counsel. Appx1717. Even though USAA has refused to identify which banks it sent letters to (Op.Br.49n.13), Mitek has provided indemnification agreements it entered into with the banks themselves, such as BBVA and Truist, prior to filing its Complaint. Appx2403-2423, Appx2239-2251. Thus, the indemnification agreements and exemplary indemnity request supply the missing second half of Mitek's indemnity-based assertion (*Mitek I*, 34 F.4th at 1344-46) to establish a reasonable potential for indemnification liability.

Recognizing that the JHA indemnity request has merit, USAA argues for the first time on appeal only that "Q2" "did not receive a letter from USAA." Resp.Br.9, 38; *cf.* Appx2349 n.6. But USAA has neither provided any record evidence in support of its conclusory assertion nor shown why it is not at least plausible that Q2 as a digital banking platform (utilized by over 40% of the top 100 U.S. banks) would have received indemnity requests from financial institutions USAA sent letters to. *See* https://www.q2.com/our-story.

USAA also relies on the district court's analysis of the carve-out language in the JHA agreement to argue that "Mitek has not demonstrated that JHA's request had plausible merit." Resp.Br.38. The district court, however, failed to recognize that the carve-out language in the JHA agreement is limited by the clause "except as part of the Integrated JHA Solutions," which is defined as "the combination of the JHA Solutions and the Mitek Products, packaged together as a single solution for licensing and delivery to Customers." Appx1663-1664; Resp.Br.38-39. In other words, JHA's use of MiSnap with other "equipment, devices or software not supplied by Mitek" does not necessarily preclude indemnification so long as MiSnap is part of the Integrated JHA Solutions as defined within the agreement. And the district court did not find—and USAA does not argue—that MiSnap is not part of the Integrated JHA Solutions.

In any event, the district court erred by improperly attempting to resolve the ultimate issue of indemnification liability. Op.Br.48-51. USAA is incorrect that this Court "mandated" the district court to adjudicate whether Mitek is subject to indemnification liability (Resp.Br.39-40), which would be contrary to the plausibility test applied at the Rule 12 stage. *Nalco*, 883 F.3d at 1350.

**2. The Post-Complaint Indemnification Requests Mitek Received Further Strengthen Mitek's Standing**

USAA also fails to show why the indemnity requests Mitek received in response to USAA's subsequent lawsuits against PNC, BBVA, and Truist are not relevant to Mitek's standing. ***First***, USAA's argument that "none of the letters are to entities to whom USAA had sent a letter" (Resp.Br.40) is not only conclusory, as USAA has refused to identify those entities, but also irrelevant, as the indemnity requests Mitek received after it filed its Complaint were the direct result of USAA's lawsuits against Mitek customers. Thus, those indemnity requests heighten Mitek's reasonable potential for indemnification liability at the time of filing.

***Second***, like the JHA agreement, USAA ignores the district court's failure to consider limitations in the carve-out language of the other agreements that also evince a reasonable potential for indemnification liability. For example, the district court does not address that for the NCR agreement, indemnification liability would only be carved out upon a determination of no contributory infringement by Mitek

or any modification not according to Mitek's instructions. Appx1679-1680 (which also extends to "End User"). With respect to the Fidelity, FiServ, and NetDeposit agreements, USAA and the district court incorrectly assume the banks are able to "modify" the MiSnap software itself—they cannot—and ignore that modifications in accordance with Mitek's instructions or consent is permitted. Appx1698-1702, Appx1709-1712, Appx1690-1692.

***Third***, for the first time on appeal, USAA points to the anti-flow down provision in the NetDeposit agreement. Resp.Br.41. Putting aside that none of the other agreements in the record contain an anti-flow down provision (Appx1652-1672, Appx1674-1686, Appx1688-1695, Appx1697-1707, Appx2239-2251, Appx2403-2423), the full language of that provision reveals that flow down to banking customer may be permitted if agreed to by Mitek. Appx1714.

***Finally***, USAA also argues for the first time on appeal that it "had no[t] sent Truist a letter" at the time Mitek filed its Complaint (Resp.Br.42), yet provided no supporting evidence. And like the other agreements discussed above, the Truist agreement also contains a limitation in the carve-out language for modifications "not authorized by, performed by, Vendor or Vendor Personnel" (Appx2244), which USAA fails to address.

#### 3. None Of The Post-Complaint Events Identified By USAA Undercut The Reasonable Potential For Indemnification Liability

USAA primarily relies on the lack of indemnity requests from Wells Fargo and PNC to show that Mitek is not "[o]bligated" to indemnify USAA's litigation targets. Resp.Br.43-44. But as this Court previously cautioned, "concession of [an indemnification request's] validity" "is not required to establish" that Mitek has standing. *Mitek I*, 34 F.4th at 1346. That Wells Fargo never made an indemnity request to Mitek does not undermine the reasonable potential for indemnification liability. Op.Br.49-51. USAA also contends that "PNC … did not seek indemnification," (Resp.Br.43) which is plainly wrong based on the indemnity requests from PNC to NCR and Finastra and from NCR to Mitek. Appx2012, Appx2014, Appx2179.

### C. The District Court Erred In Applying The Wrong Legal Standards

None of USAA's arguments demonstrate that the district court applied the correct legal standard to evaluate Mitek's standing. USAA's threshold position that it "merely needed to submit evidence extraneous to the Complaint" to raise a relevant factual challenge is incorrect. Resp.Br.45; *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981) ("A factual attack…challenges ***facts on which jurisdiction depends***.") (emphasis added).

USAA is incorrect that the district court's findings are entitled to deferential review under the "clear error" standard. Resp.Br.44. The alleged factual disputes identified by USAA are not legitimate because they are actually undisputed, such as "testimony from the Wells Fargo trial showing that suits were targeted at the bank, not Mitek," that "USAA had never accused or threatened it regarding infringement," and that Wells Fargo made "no indemnification claim" to Mitek. Resp.Br.45. Other alleged factual disputes related to the indemnity requests Mitek received and Mitek's indemnification agreements are actually facial attacks because USAA has not submitted any controverting evidence. Resp.Br.46. The remaining alleged factual disputes are either irrelevant, such as Mitek's statements to the SEC (Op.Br.48-49), or inextricably intertwined with the merits of the case and cannot be adjudicated without first accepting jurisdiction—a point USAA fails to address. Resp.Br.45-46; *see also Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) ("[W]here issues of fact are central both to subject matter jurisdiction and the claim on the merits…the trial court must assume jurisdiction and proceed to the merits.").

Recognizing that its alleged factual disputes are not legitimate, USAA argues for the first time that "drawing '[r]easonable inferences from…undisputed facts'" renders the dispute factual. Resp.Br.46. But USAA ignores the Supreme Court's determination in *Ashcroft v. Iqbal* that "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged" goes to a claim's "***facial*** plausibility." 556 U.S. 662, 663 (2009) (emphasis added); *see also Haverkamp v. Linthicum*, 6 F.4th 662, 668-69 (5th Cir. 2021) ("On a motion to dismiss for lack of jurisdiction, all well-pleaded facts are taken as true and ***all reasonable inferences*** must be made in the plaintiff's favor.") (emphasis added). Both of USAA's cases are inapposite as they were analyzed under a different posture, where they both reversed a granting of summary judgment upon finding a genuine issue of material fact. *Hunt v. Cromartie*, 526 U.S. 541 (1999); *Marshall v. Kimberly-Clark Corp*., 625 F.2d 1300 (5th Cir. 1980).

## II. THE DISTRICT COURT ABUSED ITS DISCRETION BY DECLINING TO ACCEPT JURISDICTION OVER MITEK'S DECLARATORY JUDGMENT ACTION

USAA fails to explain why any of the novel reasons identified by the district court for exercising its discretion to decline jurisdiction are "well-founded." Resp.Br.46-54. Mitek's declaratory judgment action is squarely aimed at achieving the objectives of the Declaratory Judgment Act, *i.e.*, to resolve the "uncertainty" and "delayed adjudication" as to whether MiSnap infringes the patents-in-suit. *See, e.g.*, *Minn. Min. and Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673-74 (Fed. Cir. 1991). The *in terrorem* choice Mitek faces of either accruing liability or abandoning MiSnap is the direct result of USAA's refusal "to grasp the nettle and sue" Mitek—the exact tension the Act seeks to alleviate. *Hewlett-Packard*, 587 F.3d at 1362.

### A. Mitek's Declaratory Judgment Action Would Not Be Unwieldy Or Inefficient

The district court abused its discretion in finding that Mitek's declaratory judgment action would be "[u]nwieldy" and "[i]nefficient." Appx64-65. USAA first argues that the issue of indirect infringement would require "numerous mini-trials on whether and to what extent individual banks committed infringement." Resp.Br.48. USAA, however, ignores that the patents-in-suit contain system and computer-readable medium claims and do not require analyzing if and how Mitek's customers may have customized the features of MiSnap. Op.Br.18-24. For induced infringement in particular, USAA overlooks the uncontroverted allegation that Mitek typically provides the same types of documents to its customers (Appx1645), obviating the need to examine "what Mitek knew about each customer's activities and when, and what instructions Mitek gave each customer." Resp.Br.49. The errors are further apparent in the district court and USAA's suggestion that the complexity of Mitek's declaratory judgment action somehow "exponentially" increases with the number of Mitek customers (Resp.Br.51), creating an illogical scenario where successful companies with many customers would have a harder time establishing standing than companies with fewer customers.

USAA insinuates that Mitek's declaratory judgment action would result in "piecemeal adjudication" of the issues (Resp.Br.49-50), yet fails to identify exactly

which, if any, issues would not be adjudicated. Unlike in *AbbVie Inc. v. MedImmune Ltd.*, where the declaratory judgment plaintiff sought a declaration on invalidity but not the underlying contractual dispute, 881 F.3d 1334, 1336-38 (Fed. Cir. 2018), Mitek's declaratory judgment outcome would resolve the issue of whether MiSnap infringes the patents-in-suit once and for all.

Realizing that Mitek is correct, USAA now seeks to manufacture additional complexity by threatening to assert counterclaims and additional patents against Mitek and to join the customer banks. Resp.Br.50, 51n.2. As an initial matter, USAA's new argument that it will assert counterclaims and additional patents against Mitek (Resp.Br.49-51) are express threats that crystallize Mitek's reasonable potential for suit—exactly what USAA contends has been missing from Mitek's showing for standing. Resp.Br.1, 14, 15, 28.

Further, USAA's new threat that it will join Mitek's customers (Resp.Br.49-52) only bolsters Mitek's showing that the district court abused its discretion in declining jurisdiction. USAA only cites permissive joinder under Federal Rule of Civil Procedure 20(a)(1), which allows a party to voluntarily join an action if any right to relief arises out of the same transaction or occurrence and there is a common question of law or fact, undercutting USAA's own representations that the customer suits involved "diverse and almost entirely non-overlapping issues." Resp.Br.50. Notably, USAA does not even allege Mitek's customers would be required parties

under Federal Rule of Civil Procedure 19, much less how they meet such requirements. Even if USAA does successfully join Mitek's customers, courts have consistently severed and stayed the action against customers while allowing the suit against the supplier to take "precedence" under Federal Rule of Civil Procedure 21 and the customer-suit exception. *In re Nintendo*, 756 F.3d at 1365-66; *see also In re Google, Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (rejecting the district court's premise that the "ability to modify and customize the Android platform to its own particular purpose" placed it outside of the customer-suit exception). And contrary to USAA's allegations (Resp.Br.50-51), that Wells Fargo and PNC had different defenses in their respective litigations is hardly surprising, as they were represented by different law firms litigating different sets of patents.

Finally, USAA's argument that "[d]etermining damages would likewise require an analysis of the conduct [of] banks" (Resp.Br.51) simply reflects USAA's fundamental misunderstanding of the hypothetical negotiation that would take place between ***Mitek*** and USAA. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009) is inapplicable, as any hypothetical negotiation between USAA and Mitek would take into account Mitek's customers' use of MiSnap, including under the book of wisdom. *Id.* at 1333-34 (confirming that "[c]onsideration of evidence of usage after infringement" is permissible for "assessing whether a royalty is reasonable"). And *Stickle v. Heublein, Inc.*, 716 F.2d

1550, 1562 (Fed. Cir. 1983) actually supports Mitek's position that USAA should not reasonably expect to obtain a "value [of customers'] use" royalty from Mitek as the supplier of MiSnap.

### B. The Outcome Of Mitek's Declaratory Judgment Action Would Resolve MiSnap's Infringement Issue For Mitek's Customers

Contrary to USAA's allegations (Resp.Br.52-54), Mitek's declaratory judgment action would resolve the issue of whether MiSnap infringes the patents-in-suit regardless of any customizations by Mitek's customers. Unlike the declaratory judgment plaintiff in *BP Chemicals*, this action was not brought for "marketing and competitive purposes" and would "bind its licensees" because it is undisputed that MiSnap is provided to each licensee with substantially the same capabilities. 4 F.3d at 981; Appx1644, ¶ 6.

USAA raises new arguments with respect to *res judicata* and exhaustion (Resp.Br.52-54), none of which are meritorious. For *res judicata*, USAA relies on the district court's erroneous finding that "a determination of whether a component of Mitek's software, sold as-is, infringes the Asserted Patents will have no bearing and no estoppel effect on whether a modified version of the same component is infringing." Appx60-61. But USAA fails to explain why a determination that MiSnap does not perform the claim limitations directed to auto-capture would not preclude USAA from re-litigating the same issue with Mitek's customers based on

their use of MiSnap. USAA's *res judicata* cases are not applicable here. *See, e.g.*, *Inguran, LLC v. ABS Glob., Inc.*, 72 F.4th 1272, 1280 (Fed. Cir. 2023) (finding that a patentee is not precluded from asserting induced infringement after voluntarily dismissing with prejudice its direct infringement claim against the same accused infringer); *Smith v. Bayer Corp.*, 564 U.S. 299, 312-18 (2011) (holding that an unnamed class member is not party to a class-action litigation before the class is certified).

USAA's new argument related to exhaustion is also critically flawed. Resp.Br.53-54. It is well settled that "a patentee may not sue users of an infringing product for damages if he has collected actual damages from a manufacturer or seller, and those damages fully compensate the patentee for infringement by users." *Transclean v. Jiffy Lube*, 474 F.3d 1298, 1303 (Fed. Cir. 2007). Nor has USAA shown why a reasonable royalty paid by Mitek, as the "upstream supplier" sitting at the table of the hypothetical negotiation, would not fully compensate USAA for the use of MiSnap by Mitek's customers. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012) ("[A] direct infringer or someone who induced infringement should pay the same reasonable royalty based on a single hypothetical negotiation analysis."). USAA's cited cases do not support its position. *See, e.g.*, *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001) (simply finding that an importer of accused product may be jointly and severally liable with reseller);

*SynQor, Inc. v. Cisco Sys., Inc.*, No. 2:14-CV-286, 2014 WL 12638157, at *5 (E.D. Tex. Sept. 4, 2014) ("[T]he law treats the payment of full compensation for past sales and uses as transforming those sales and uses into licensed sales and uses.") (citation omitted).

Tellingly, USAA makes no attempt to justify why MiSnap should be treated "differently at different stages in the supply chain." *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 993–94 (Fed. Cir. 2022). In *Foster v. Am. Mach. & Foundry Co.*, the Second Circuit encountered a similar situation and affirmed the district court's finding that the supplier, rather than the numerous mill operators, was the proper party at the patent license hypothetical negotiation. 492 F.2d 1317, 1321 (2d Cir. 1974) (finding a damages award calculated based on the use by the mill operators that exceeded the total revenue of the supplier for the damages period was improper). Thus, whether Mitek's "current market capitalization is less than the damages awarded to USAA for infringement" by Mitek's customers (Resp.Br.54) has no bearing as to whether Mitek is the appropriate party at the hypothetical negotiation.

None of USAA's exhaustion cases are applicable. *Honeywell Int'l, Inc. v. United States* involved a "peculiar set of facts" involving the first sale doctrine, where the current patentee sought to recover damages for use of an infringing product it sold to the federal government ***before*** it acquired the patents-at-issue. 609 F.3d 1292, 1303-04 (Fed. Cir. 2010). And USAA only cites *JVC Kenwood Corp. v.*

*Nero, Inc.*, 797 F.3d 1039, 1046 (Fed. Cir. 2015), for black-letter law that the component must "substantially embod[y]" the patent, which USAA has already demonstrated through its focus on MiSnap as central to its infringement theories. *See supra*, Argument, § I.A1.

### C. The District Court Abused Its Discretion In Finding That Intervention Supported Declining Jurisdiction

USAA has failed to rebut Mitek's showing that the district court erred in concluding that intervention would be a more effective or efficient alternative. Resp.Br.54-56. Now that the *Truist* suit has settled, there are currently no pending customer suits in which Mitek could intervene. Instead, Mitek will have to wait to clear the air for the "next litigation, if any." Appx60-62.

As an initial matter, USAA does not dispute that there is no requirement to intervene. Nor does USAA make any attempt to show that Mitek could have successfully intervened on a mandatory or permissive basis. Resp.Br.54-56; Op.Br. 56-60.

USAA also has not shown why the district court did not abuse its discretion in relying on Mitek's failure to intervene in subsequent customer suits. Resp.Br.54-56. Based on USAA's assertion of only a subset of the patents-in-suit after the *Wells Fargo* litigation, Mitek will most likely have to intervene in at least two but potentially up to four subsequent customer suits (assuming USAA does eventually

re-assert each of the four patents-in-suit), while exposing itself to inordinate litigation expenses and excessive liability. Appx61-62; Op.Br.58-59. USAA fails to explain how Mitek's intervention to adjudicate a single customer's implementation of MiSnap for the patents-in-suit would resolve the issue of infringement for Mitek's other customers, which would only result in the "piecemeal adjudication" USAA decries. Only Mitek's declaratory judgment action is aimed at resolving the infringement inquiry for all customers on the patents-in-suit under any implementation or customization of MiSnap.

### D. Mitek's Declaratory Judgment Action Is The Only Avenue For Mitek To Resolve The Alleged Infringement Of The Patents-in-Suit

Far from "seek[ing] a do-over of the Wells Fargo case" (Resp.Br.58), Mitek is merely seeking to finally have its day in court with respect to MiSnap's alleged role in the infringement of the patents-in-suit. Although Mitek was involved in the *Wells Fargo* litigation as a third party, USAA does not dispute that Mitek had no control over that litigation and therefore had no say in the decisions related to which defenses to assert. *TRW, Inc. v. Ellipse Corp.* is far from "identical" to the instant situation, where Mitek has been denied a "fair opportunity to litigate the issue" (495 F.2d 314, 322 (7th Cir. 1974)), because, as USAA itself argued, Mitek is not in privity with any of its customers (*id.* at 317-318). Appx2324; Resp.Br.36-37. Without its declaratory judgment action, Mitek will effectively be deprived of any

avenue to clear the air surrounding alleged infringement of its software and will continue to be at the mercy of USAA's vexatious litigation strategy.

DATED: December 29, 2023

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By *\/s\/ Brian E. Mack*

Brian E. Mack
David Eiseman
Jonathan Tse
50 California Street, 22nd Floor
San Francisco, CA 94111-4788
(415) 875-6600
davideiseman@quinnemanuel.com
brianmack@quinnemanuel.com
jonathantse@quinnemanuel.com

*Counsel for Mitek Systems, Inc.*

**CERTIFICATE OF SERVICE**

I, Brian Mack, hereby certify that on December 29, 2023, I will cause to be served electronically on all counsel of record the foregoing Reply Brief of the Appellant.

Dated: December 29, 2023

*<u>/s/ Brian E. Mack</u>*

Brian E. Mack
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111-4788

*Counsel for Mitek Systems, Inc.*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-1687

**Short Case Caption:** Mitek Systems, Inc. v. United States Automobile Association

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6970 words.

☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.

☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 12/29/2023

Signature: /s/ Brian E. Mack

Name: Brian E. Mack