# United States Court of Appeals for the Federal Circuit

---

**MITEK SYSTEMS, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED SERVICES AUTOMOBILE ASSOCIATION,**
*Defendant-Appellee*

---

2023-1687

---

Appeal from the United States District Court for the Eastern District of Texas in No. 2:20-cv-00115-JRG, Chief Judge J. Rodney Gilstrap.

---

Decided: June 12, 2025

---

BRIAN MACK, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA, argued for plaintiff-appellant. Also represented by DAVID EISEMAN, IV, JONATHAN TSE.

LISA GLASSER, Irell & Manella LLP, Newport Beach, CA, argued for defendant-appellee. Also represented by MICHAEL DAVID HARBOUR, JASON SHEASBY, Los Angeles, CA.

---

Before TARANTO, SCHALL, and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge*.

Mitek Systems, Inc. (Mitek) appeals the decision of the United States District Court for the Eastern District of Texas, which dismissed Mitek's declaratory judgment action of non-infringement against United Services Automobile Association (USAA) concerning U.S. Patent Nos. 8,699,779 ('779 patent), 9,336,517 ('517 patent), 9,818,090 ('090 patent), and 8,977,571 ('571 patent) (collectively, patents-in-suit). *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 20-CV-00115, 2023 WL 2734372 (E.D. Tex. Feb. 23, 2023) (*Decision*).

This case returns to us for the second time, now with an expanded record. In the first appeal, in relevant part, we vacated the district court's original dismissal for lack of subject-matter jurisdiction, as well as its alternative discretionary dismissal, and remanded for further proceedings. *See Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1349 (Fed. Cir. 2022) (*Mitek I*). On remand, the district court again determined that it lacked subject-matter jurisdiction over Mitek's action, and, even if jurisdiction existed, it would exercise its discretion to decline to accept jurisdiction. *See Decision*, 2023 WL 2734372, at *28. For the reasons explained below, we *affirm*.

## BACKGROUND

Our previous decision introduces the parties, the patents-in-suit, and discusses the facts leading up to Mitek's first appeal. *Mitek I*, 34 F.4th at 1337–40. We assume familiarity with those facts and therefore provide additional details only as relevant to this appeal.

## I

Throughout this case, Mitek has asserted two jurisdictional bases for its declaratory judgment action concerning

its software product MiSnap[1]: "(a) its potential liability for infringement; and (b) the alleged demands for indemnity made by many of its licensees after USAA sent them letters seeking to sell them licenses to USAA patents." *Id.* at 1341–42. The district court originally dismissed Mitek's complaint by analyzing the issues at a high level of generality, as did the parties. We remanded for "finer parsing of the issues and more particularized determinations . . . both from the parties and from the district court." *Id.* at 1342. We also instructed the district court to identify whether it was treating USAA's Federal Rule of Civil Procedure 12(b)(1) motion as a facial or factual challenge.[2] *Id.* at 1342, 1344, 1346.

Regarding Mitek's potential liability for infringement, we emphasized that the district court's "primary task" was "to ascertain the alleged role of the Mitek technology in the banks' applications and the alleged role that the Mitek technology plays in infringement claims." *Id.* at 1344. We explained that determining whether Mitek faced a

---

[1] MiSnap is a software development kit developed by Mitek that provides automatic image capture technology. Mitek licenses MiSnap to financial institutions for incorporation within their mobile banking applications.

[2] The Fifth Circuit has distinguished between "facial" and "factual" challenges in motions to dismiss for standing, explaining that a challenge is "factual" rather than "facial" if the defendant "submits affidavits, testimony, or other evidentiary materials." *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citation omitted). "To defeat a factual attack, a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Id.* (citation omitted).

reasonable potential for an infringement suit required "look[ing] to the elements" of the separate types of infringement, i.e., direct, induced, and contributory infringement. *Id.* at 1343 (alteration in original) (quoting *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 903–05 (Fed. Cir. 2014)). Additionally, we noted that even if a case or controversy between Mitek and USAA existed at the time the complaint was filed, post-filing events and evidence may indicate whether "it ceased to exist later." *Id.* at 1344. Regarding Mitek's potential for indemnification liability, we recognized that "[t]he character of the indemnity demands received and the precise scope of the corresponding indemnity agreements may bear heavily on the sufficiency of Mitek's indemnity-based interest in obtaining the requested declaratory judgment." *Id.* at 1346 (citations omitted).

As for the district court's original decision that it would decline to exercise jurisdiction even if it existed, we determined that the district court abused its discretion for failing to provide "reasons independent of its reasons for its jurisdictional dismissal." *Id.* at 1347. We noted the district court appeared to "suggest[] that the route of intervention in one or more USAA suits against Mitek customers is preferable," but such a determination required "more analysis of various issues." *Id.* at 1347–48; *see id.* (listing four nonexhaustive issues for the district court to consider).

II

On remand, the district court ordered briefing on a litany of issues prompted by *Mitek I*. *See Decision*, 2023 WL 2734372, at *4–5. The district court initially addressed whether USAA's Rule 12(b)(1) motion was a facial or a factual challenge. It noted various categories of disputed facts and determined that "USAA mounted a factual attack" as to both of Mitek's jurisdictional bases. *Id.* at *17.

Next, the district court addressed whether Mitek reasonably apprehended an infringement suit. As to direct

infringement, the district court determined that "Mitek could not have reasonably apprehended a suit for direct infringement . . . at the time [Mitek's] [c]omplaint was filed" based on the record evidence, including "the parties' own admissions about how the MiSnap product works, how it is implemented by end-user banks, and the evidence presented at trial in the Wells Fargo Case."[3] *Id.* at *19. As to induced infringement, the district court found *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899 (Fed. Cir. 2014), particularly relevant, explaining that, like in *DataTern*, USAA has never pointed to Mitek documents or manuals that instruct users of MiSnap to perform all the limitations of any asserted claim. *Decision*, 2023 WL 2734372, at *21. And as to contributory infringement, the district court found that "there has never been a suggestion, in claim charts or otherwise, that MiSnap is not suitable for substantial non-infringing uses or that Mitek knew its software was 'especially made or adapted for use in an infringement' of USAA's patents." *Id.* Overall, the district court determined that Mitek was unable to establish "a case or controversy between USAA and Mitek as to direct, induced, or contributory infringement." *Id.* Furthermore, the district court noted that several post-complaint events support its conclusion "that Mitek's apprehension of suit in 2019 was unreasonable and also demonstrate[] that any case or controversy that *might* have existed at the time of filing was

---

[3] In June 2018, USAA sued Wells Fargo—one of Mitek's customers—for patent infringement in the Eastern District of Texas. *See* Complaint, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245 (E.D. Tex. June 7, 2018), ECF No. 1. The case went to trial in late 2019, during which Mitek filed its declaratory judgment complaint against USAA. USAA and Wells Fargo ultimately settled their suit in early 2021.

not ongoing, but was extinguished after USAA's settlement with Wells Fargo." *Id.* at *21–22.

The district court also considered Mitek's second basis for jurisdiction—whether there was a reasonable potential for indemnification liability—and concluded there was not. *Id.* at *22–24. The district court reviewed a letter that USAA sent to Mitek's customers along with several indemnification agreements involving Mitek and found that they "do not create a 'reasonable potential' for Mitek's indemnification liability." *Id.* at *24.

Finally, the district court considered whether it should accept jurisdiction even if it existed. *Id.* at *24–28. It determined it would "exercise its discretion in declining to accept declaratory judgment jurisdiction." *Id.* at *28. While acknowledging that "Mitek *is* likely in the best position to defend its own software," the district court stated the proposed declaratory judgment suit "is not the best *way*" for Mitek to do so. *Id.* at *26. Instead, the district court found that "the best means by which Mitek can defend its software *as that software is used by banks* is to intervene, either as of right or permissively, in the next litigation, if any, brought by USAA against a Mitek customer which asserts the [patents-in-suit]." *Id.* The district court also noted practical concerns, explaining that it saw "no path by which Mitek can litigate this case without extensive involvement by end-user banks, either through third-party discovery or through joining additional parties." *Id.* at *27. Additionally, the district court expressed uncertainty as to whether any determinations in Mitek's declaratory judgment action case "would have any applicability or estoppel effect upon the end-users." *Id.*

Mitek timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

"Federal Circuit law governs our review as to whether an actual controversy exists under the Declaratory Judgment Act when the underlying merits of an action involve patent infringement and/or validity." *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 940 (Fed. Cir. 2006). However, for non-patent issues, such as whether a Rule 12(b)(1) motion should be treated as a facial or a factual challenge, we apply the law of the regional circuit. *Mitek I*, 34 F.4th at 1341. Here, the regional circuit to which appeal would ordinarily lie is the Fifth Circuit.

"Whether the district court had subject matter jurisdiction is a question we review *de novo*." *DataTern*, 755 F.3d at 903. As we explained in *Mitek I*, that determination is based on the particular facts, and "[d]ifferent procedural routes are available to identify the facts." 34 F.4th at 1340. In particular, a district court may dismiss a case under Rule 12(b)(1) based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 1341 (quoting *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012)). When a "district court has expressly relied on its resolution of disputed jurisdictional facts, 'those findings are reviewed for clear error.'" *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (citation omitted).

We review a district court's decision to decline jurisdiction over a declaratory judgment action for an abuse of discretion. *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361 (Fed. Cir. 2020) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995)).

### I

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any

court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act does not expand a federal court's subject matter jurisdiction. Rather, the phrase "case of actual controversy" in the Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007) (citation omitted).

"The threshold question for declaratory judgment jurisdiction is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *DataTern*, 755 F.3d at 903 (quoting *MedImmune*, 549 U.S. at 127). We have explained that, following *MedImmune*, "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (citation omitted).

"The case-or-controversy inquiry has a dual temporal focus." *Mitek I*, 34 F.4th at 1340. First, a "declaratory judgment plaintiff must plead facts sufficient to establish jurisdiction at the time of the complaint, and post-complaint facts cannot create jurisdiction where none existed at the time of filing." *Id.* (quoting *DataTern*, 755 F.3d at 906). Second, a "case or controversy must remain present throughout the course of the suit." *Id.* (citing *Preiser v. Newkirk*, 422 U.S. 395, 401–02 (1975)).

Mitek asserts that it has standing to bring its declaratory judgment action because it has established (A) a

reasonable potential for infringement claims and (B) a reasonable potential for indemnification liability.

A

Beginning with Mitek's alleged infringement basis for standing, it contends that it has established a reasonable potential of suit for direct, induced, and contributory infringement. We address each type of infringement in turn.

1

Under 35 U.S.C. § 271(a), direct infringement can be found when "each and every limitation set forth in a claim" is found in an accused product. *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1371 (Fed. Cir. 2019) (citation omitted). "[B]ased on the parties' own admissions about how the MiSnap product works, how it is implemented by end-user banks, and the evidence presented at trial in the Wells Fargo Case," the district court determined that "Mitek could not have reasonably apprehended[4] a suit for

---

[4] As we explained in *Mitek I*, in establishing jurisdiction, "[t]he Supreme Court in *MedImmune* rejected a general requirement of a reasonable apprehension of suit" in favor of the all-the-circumstances test. 34 F.4th at 1342 n.3 (citing 549 U.S. at 132 n.11). But we have recognized that "in the wake of *MedImmune*, 'proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test' to establish jurisdiction." *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012) (citation omitted). Mitek advanced a reasonable apprehension theory before the district court prior to Mitek's first appeal, *see Mitek I*, 34 F.4th at 1342 n.3, and continued to pursue this theory on remand, *see, e.g.*, J.A. 1618 ("USAA's Infringement Allegations . . . Support

direct infringement of the [patents-in-suit] at the time the [c]omplaint was filed." *Decision*, 2023 WL 2734372, at *19. We agree.

It is undisputed that USAA has never accused the MiSnap software of satisfying every limitation of any claim. In Mitek's post-remand reply brief, it acknowledged that there is no allegation "that MiSnap alone performs all the asserted limitations of the patents-in-suit." J.A. 2223 n.6. Mitek also acknowledges that, during the Wells Fargo trial, USAA only "alleged that two of the three limitations of claim 1 of the '571 [p]atent and four out of seven limitations of claim 1 of the '090 [p]atent were allegedly performed by MiSnap." Appellant's Br. 41. Furthermore, in proceedings before the Patent Trial and Appeal Board (PTAB), Mitek stated that USAA "has never accused or even threatened Mitek of infringement of the challenged patent[s]" and that "Mitek provides technology to Wells Fargo that allegedly performs only some (but not all) of the limitations of any claim of the challenged patent[s]." J.A. 1047.[5]

The district court also emphasized that MiSnap has features that can be customized by end-users and "that the 'unadulterated MiSnap software implemented by third party banks' does not meet certain elements of the asserted claims." *Decision*, 2023 WL 2734372, at *18–19 (citation

---

Mitek's Reasonable Apprehension of Suit"). Here, as in its original dismissal, the district court's references to this theory are responsive to Mitek's arguments.

[5] Mitek made these statements in an email to the PTAB requesting a Precedential Opinion Panel review of the PTAB's discretionary denial of Mitek's *inter partes* review petitions regarding the '571 and '779 patents, which the PTAB had denied "as unfair follow-on petitions to Wells Fargo's" earlier petitions. J.A. 1047.

omitted). The patents-in-suit plainly support this finding. For example, three out of the four patents require "provid[ing] the image of the check from the camera to a depository," or a substantively similar limitation. '571 patent at claim 1; *see* '779 patent at claim 1; '517 patent at claim 1. This step depends on the end-user's internal system and is unrelated to MiSnap. *See* Appellee's Br. 17 (A Mitek representative testified at the Wells Fargo trial that after the image is captured, "MiSnap returns it back to the Wells Fargo app. It's out of our hands after that." (quoting J.A. 1207)). Additionally, claim 1 of the '090 patent requires "an image capture device," "a presentation device," and "a processor." '090 patent at claim 1. MiSnap is a software development kit, however, and cannot satisfy these hardware elements.

Mitek argues that the district court "gave undue weight to the customizability of MiSnap by Mitek's customers." Appellant's Br. 18. In Mitek's view, the district court should have focused on the "programmed capabilities of MiSnap." *Id.* at 19. Mitek cites to *INVT SPE LLC v. International Trade Commission*, where this court explained that functional language in software and computer claims is frequently construed "as not requiring actual performance of those operative steps for infringement purposes," but rather the "'capab[ility] of operating' according to a claimed limitation." 46 F.4th 1361, 1371–1373 (Fed. Cir. 2022) (quoting *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010)). For claims directed to capability, "the claims recite a device with the capability of performing the recited functions when in operation *without any modification or further programming*." *Id.* at 1374 (emphasis added). Even assuming, without deciding, that the asserted claims are drawn to capability, the issue for Mitek is that MiSnap is a software development kit that is not capable of satisfying certain computer hardware-related limitations in the asserted claims, unlike the accused products in *INVT* and *Finjan*. *See id.* at 1366 ("The accused

devices are communication devices, including smartphones, tablets, smart watches, and computers . . . ."); *Finjan,* 626 F.3d at 1201 ("Defendants sold three accused computer security products . . . .").

Faced with these circumstances, Mitek next argues that because it "tests the 'complete mobile deposit system,'" there is a reasonable potential for its own testing to be accused of direct infringement. Appellant's Br. 34 (citation omitted). The district court considered and correctly rejected this theory. First, the district court noted that Mitek never alleged in its complaint "that any of its own testing might give rise to an apprehension of suit for direct infringement." *Decision*, 2023 WL 2734372, at *19; *cf. U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) ("The failure to obtain leave results in an amended complaint having no legal effect."). Second, USAA asserts it was unaware of Mitek's alleged testing until Mitek first raised it on remand, and Mitek fails to identify any action taken by USAA related to Mitek's testing. Accordingly, Mitek could not have had a reasonable apprehension of suit based on its testing. *See Prasco*, 537 F.3d at 1339 ("[J]urisdiction generally will not arise . . . without some affirmative act by the patentee." (citation omitted)).

2

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). A claim for induced infringement requires that "there has been direct infringement by a third party and that the alleged infringer affirmatively induced that infringement with knowledge that the induced acts constituted patent infringement." *Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*, 104 F.4th 1370, 1377 (Fed. Cir. 2024). Accordingly, liability under § 271(b) requires an affirmative act encouraging infringement. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("The addition of the adverb 'actively' suggests that the inducement must

involve the taking of affirmative steps to bring about the desired result." (citation omitted)).

The district court found that "the facts of *DataTern* are on point with this case." *Decision*, 2023 WL 2734372, at *21. In *DataTern*, in relevant part, we reviewed a district court's denial of DataTern's motion to dismiss Microsoft's declaratory judgment action. Prior to Microsoft's declaratory judgment action, DataTern sued several Microsoft customers for patent infringement and provided them with claim charts in support of its allegations. *DataTern*, 755 F.3d at 902. For one patent, these charts cited "to Microsoft-provided online documentation for *each limitation*" of the representative claims, which we determined "supports Microsoft's claim that there is a substantial controversy regarding inducement." *Id.* at 905 (emphasis added). For the second patent, however, the claim charts "cite[d] exclusively to third-party—not Microsoft provided—documentation for several key claim limitations." *Id.* We determined that those charts "do not impliedly assert that Microsoft induced that infringement" because nothing "suggests that Microsoft encouraged the acts accused of direct infringement," despite the fact that those charts "allege the customers' direct infringement of" the patent based on the customers' use of Microsoft's technology. *Id.* Accordingly, we held that Microsoft established jurisdiction for its declaratory judgment action with respect to the first patent, but not the second. *Id.* at 907.

Turning back to our case, we agree with the district court that *DataTern*'s reasoning applies. Mitek primarily relies on USAA's allegations at the Wells Fargo trial to establish a reasonable potential for inducement claims. As an initial point, suits against customers do not "automatically give rise to a case or controversy regarding induced infringement." *Id.* at 904. But more importantly, "[l]ike in *DataTern*, USAA has *never* alleged that MiSnap meets every element of every asserted claim and has *never* cited to Mitek documentation in its claim charts as evidence of

infringement of every element of every asserted claim." *Decision*, 2023 WL 2734372, at *21. Rather, as Mitek acknowledges, USAA relied on Mitek's documentation during the Wells Fargo trial for only certain limitations of each asserted claim. *See* Appellant's Br. 41 ("In the first Wells Fargo trial . . . USAA alleged that two of the three limitations of claim 1 of the '571 [p]atent and four out of seven limitations of claim 1 of the '090 [p]atent were allegedly performed by MiSnap."). Mitek has not pointed to any suggestion by USAA or other record evidence—including the documentation provided with MiSnap—that establishes a reasonable potential that Mitek encourages performance of the remaining limitations.

Mitek argues that the district court applied an overly "strict" test and should have instead considered whether "the supplier's product is a 'material component' of the customer's alleged direct infringement." Appellant's Br. 38 (emphasis omitted) (quoting *Arris Grp., Inc. v. Brit. Telecomms. PLC*, 639 F.3d 1368, 1375–76 (Fed. Cir. 2011)). However, as *Arris* makes clear, whether a supplier's product is a "material component" is a matter for contributory infringement under 35 U.S.C. § 271(c), not induced infringement under § 271(b). Accordingly, the district court did not err in rejecting this argument.

3

As outlined in the statutory text, a claim for contributory infringement requires that: "(1) the defendant had 'knowledge of the patent in suit,' (2) the defendant had 'knowledge of patent infringement,' and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial non-infringing use." *Bio-Rad Lab'ys, Inc. v. ITC*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015)); *see* 35 U.S.C. § 271(c). The district court found that "there has never been a suggestion, in claim charts or otherwise, that MiSnap is not suitable for

substantial non-infringing uses." *Decision*, 2023 WL 2734372, at *21.

We see no error in this finding and agree that Mitek has not established a reasonable potential for suit based on contributory infringement. In fact, "USAA has *expressly* said the opposite—*i.e.*, that MiSnap has several substantial non-infringing uses." *Id.* For example, USAA told the district court in its post-remand briefing that "end-users can customize and use Mitek's software libraries in many ways, including non-infringing ways." *Id.* at *12 (citation omitted); *see* Appellee's Br. 26 (noting that a Wells Fargo corporate representative testified at trial that end-users have "the ability to flip the switch, if you will, and cease use of the infringing technology," while still providing mobile deposit (quoting J.A. 1231–32)). Customizing these features in a non-infringing manner (e.g., using manual capture instead of auto capture) constitutes a substantial non-infringing use. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012) ("Where the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie.").

Mitek argues that it has established a reasonable potential of a contributory infringement claim because MiSnap was "primarily developed" for "'touch-free auto-capture' functionality for document acquisition." Appellant's Br. 46 (emphasis and citation omitted). This misses the mark. As we have explained, even where "practicing the patented method may be the most logical or useful purpose for" a product, that "does not render the alternative uses 'unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *In re Bill of Lading*, 681 F.3d at 1338 (citation omitted). Moreover, even if MiSnap has no substantial non-infringing uses, the record does not show that USAA ever suggested that. *See DataTern*, 755 F.3d at 906 (finding that the "claim charts . . . do not

impliedly assert contributory infringement against Microsoft" because "they do not imply or suggest that Microsoft's [software] is not 'a staple article or commodity of commerce suitable for substantial non-infringing use'" (citation omitted)).

Ultimately, we agree with the district court's determination that the record evidence, including "USAA's allegations, arguments, and claim charts from the Wells Fargo Case, which cited to Mitek documentation as evidence of infringement for only some of many claim limitations, did not give rise to a case or controversy between USAA and Mitek as to direct, induced, or contributory infringement." *Decision*, 2023 WL 2734372, at *21.

4

The district court also considered post-complaint evidence and events, because "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser*, 422 U.S. at 401. As an initial matter, during the pendency of this appeal, this court affirmed the PTAB's final written decisions determining that claims 1–6, 9–10, and 12–13 of the '571 patent and claims 1–2, 7–10, and 15–17 of the '779 patent are unpatentable. *United Servs. Auto. Ass'n v. PNC Bank N.A.*, Nos. 2023-2124, 2023-2125, 2025 WL 370141 (Fed. Cir. Feb. 3, 2025). Our mandate for this judgment issued on May 14, 2025. *See* Fed. R. App. P. 41. Accordingly, any case or controversy that may have existed between USAA and Mitek regarding the enforcement of those claims has been extinguished. USAA is collaterally estopped from asserting these claims in any further proceeding. *See XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) ("[A]n affirmance of an invalidity finding, whether from a

district court or the Board, has a collateral estoppel effect on all pending or co-pending actions.").[6]

Notwithstanding this development, which was not before the district court at the time of its decision, the district court found that post-complaint evidence "both supports [its] determination that Mitek's apprehension of suit in 2019 was unreasonable and also demonstrates that any case or controversy that *might* have existed at the time of filing was not ongoing." *See Decision*, 2023 WL 2734372, at *21. The Wells Fargo litigation, which was the only lawsuit between USAA and a Mitek customer pending at the time of Mitek's complaint, settled in early 2021.

Mitek argues that subsequent lawsuits between USAA and two of Mitek's customers—PNC Bank, National Association (PNC)[7] and Truist Bank (Truist)[8]—strengthen Mitek's standing to bring a declaratory judgment action. *See* Appellant's Reply Br. 13. We disagree. The suit against PNC involved only two of the patents-in-suit, the '571 and '779 patents, both of which had the relevant claims invalidated by the PTAB and affirmed as invalid by this court. The suit against Truist involved only one of the patents-in-suit, the '090 patent. As the district court

---

[6] We also note that Mitek's complaint seeks a determination that Mitek does not infringe "any *valid or enforceable* claim" of the patents-in-suit. J.A. 80 ¶ 1 (emphasis added).

[7] Amended Complaint, *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 20-cv-00319, (E.D. Tex. Dec. 2, 2020), ECF No. 12. Mitek also separately refers to a lawsuit against BBVA USA (BBVA), but BBVA was acquired by and merged into PNC. *See Decision*, 2023 WL 2734372, at *21.

[8] Complaint, *United Servs. Auto. Ass'n v. Truist Bank*, No. 22-cv-00291, (E.D. Tex. July 29, 2022), ECF No. 1.

recognized, "[i]n each subsequent lawsuit against Mitek customers, fewer of the [patents-in-suit] have been litigated and use of evidence related to MiSnap has decreased." *Decision*, 2023 WL 2734372, at *22. Since the Truist and PNC lawsuits, both of which have settled, there has been no litigation involving the patents-in-suit. Furthermore, these lawsuits evince "USAA's own stated strategy of suing competitor banks rather than the supplier." *Id.*; *see DataTern*, 755 F.3d at 907 (noting "that DataTern's litigation strategy appears to involve suing software users, not software suppliers").

Our review of post-complaint events and evidence further supports the district court's conclusion that it lacked subject-matter jurisdiction over Mitek's non-infringement claims. *See BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993) ("Although it is the situation at the time suit was filed that establishes the existence *vel non* of an actual controversy, subsequent events can reinforce the correctness of the conclusion." (citation omitted)).

B

Next, we turn to Mitek's second basis for standing: whether it has established a reasonable potential of indemnification liability. In *DataTern*, we explained that a supplier of software does not have the "right to bring [a] declaratory judgment action solely because [its] customers have been sued for direct infringement." 755 F.3d at 904. However, if the supplier "had an obligation to indemnify [its] customers, [it] would then have standing to bring suit." *Id.* (citation omitted); *see also Arris*, 639 F.3d at 1375 ("[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if . . . the supplier is obligated to indemnify its customers from infringement liability . . . ."). "In that instance, [the supplier] would stand in the shoes of the customers and would be representing the interests of [its]

customers because of [its] legal obligation to indemnify." *DataTern*, 755 F.3d at 904.

To establish standing for indemnification liability, Mitek had to show both (1) a case or controversy between USAA and Mitek's customers and (2) a reasonable potential for Mitek's indemnification liability with respect to those customers. *Mitek I*, 34 F.4th at 1345–46. In *Mitek I*, we determined that that there was "just enough" to establish the first part, given USAA's letter campaign and the Wells Fargo litigation. *Id.* at 1345. On remand, Mitek sought to establish the second part—a reasonable potential for indemnification liability.

After considering the record and the indemnification agreements Mitek produced on remand,[9] we agree with the district court that "Mitek could not have reasonably believed it would be subject to indemnification liability." *Decision*, 2023 WL 2734372, at *22. The district court found that each agreement contained applicable carve-outs that precluded a reasonable potential for indemnification liability. Appellant's Br. 48; Appellee's Br. 40; *see Decision*, 2023 WL 2734372, at *23. We see no error in this analysis.[10] Additionally, most of the agreements Mitek identified involve "third-party financial services provider[s], who in turn [have] separate indemnification agreements with end-user banks." *Decision*, 2023 WL 2734372, at *24. Mitek has not established a case or controversy between these third-party financial service providers—the indemnitees—

[9] The agreements have been designated confidential, so we do not recount their details here.

[10] Mitek argues for the first time in its reply brief on appeal that one agreement includes language that could plausibly exempt it from the applicable carve-out. *See* Appellant's Reply Br. 18. Mitek failed to raise this argument both before the district court and in its opening brief on appeal. Accordingly, it is forfeited.

and USAA. Therefore, Mitek has failed to establish standing based on these agreements. *See BP Chems.*, 4 F.3d at 981 (explaining that an indemnitor may not "bring a declaratory action on its own behalf when there is no actual controversy involving the indemnitee"); *Decision*, 2023 WL 2734372, at *24 ("Mitek has not come forward with any case law to suggest that such a broken chain of indemnification can create a reasonable likelihood of indemnification liability from the end-user to the manufacturer with which it is not in privity.").

Mitek argues that the district court improperly adjudicated the merits of the indemnification agreements. Appellant's Br. 48. As we explained in *Mitek I*, "we have never held that the validity of an indemnity demand, *i.e.*, the applicability of an indemnity agreement to the demander's circumstances, needs to be conceded to establish subject-matter jurisdiction." 34 F.4th at 1346. Contrary to Mitek's characterization, the district court did not impose such a requirement. Rather, as per our remand instructions, it appropriately assessed the "precise scope" of the agreements to determine whether Mitek faced a reasonable potential for indemnification liability. *Id.* We reject Mitek's attempt to establish standing based on the existence of these agreements alone. *See DataTern*, 755 F.3d at 904 ("Appellees seek to broaden our precedent quite substantially by arguing that a customer request to indemnify ought to give rise to standing, without regard, it appears, to the merit of the customer request. This cannot be.").

## II

Having already concluded Mitek does not have any basis for jurisdiction, we nonetheless address the district court's alternative discretionary dismissal.

The Declaratory Judgment Act provides that a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The statute's use of the word

"may" grants district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. However, this discretion is not without limits—"[t]here must be well-founded reasons for declining to entertain a declaratory judgment action." *Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004). As we explained in *Mitek I*, "as long as a district court 'acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, [it] has broad discretion to refuse to entertain a declaratory judgment action.'" *Mitek I*, 34 F.4th at 1347 (alteration in original) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813–14 (Fed. Cir. 1996)).

For example, we have recognized that "[w]hile the existence of another adequate remedy does not necessarily bar a declaratory judgment, district courts may refuse declaratory relief where an alternative remedy is better or more effective." *Ford Motor Co. v. United States*, 811 F.3d 1371, 1379–80 (Fed. Cir. 2016) (citation omitted). Likewise, a district court "may decline to exercise declaratory judgment jurisdiction if it would not afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *BP Chems.*, 4 F.3d at 981 (affirming the district court's decision to decline to exercise jurisdiction where the "declaratory action would not resolve all of the issues raised, since none of the licensees [was a] party to [the] action").

Here, the district court determined that "[e]ven if [its] resolution of the disputed facts and issues" related to jurisdiction "is somehow flawed, [it] would still . . . exercise its discretion in declining to accept declaratory judgment jurisdiction in this case." *Decision*, 2023 WL 2734372, at *28. Unlike its original decision, on remand, the district court provided detailed, independent analysis—separate from its jurisdictional findings and conclusions—explaining why it would still decline jurisdiction even if it existed. *Id.* at *24–28. We see no abuse of discretion in that determination.

The district found that the "best" way for Mitek to defend its software would be "to intervene, either as of right or permissively, in the next litigation, if any, brought by USAA against a Mitek customer which asserts the [patents-in-suit]." *Id.* at *26; *see Ford Motor Co.*, 811 F.3d at 1379–80 ("[D]istrict courts may refuse declaratory relief where an alternative remedy is better or more effective."). In the absence of a federal statute that provides an unconditional right to intervene, intervention of right requires that the intervenor "claims an interest relating to the property or transaction that is the subject of the action," and that resolving the action "may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a). This rule is "liberally construed" to permit intervention. *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015). Permissive intervention, by contrast, and in the absence of a statute that provides a conditional right to intervene, requires only that the intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).

Mitek argues that the district court failed to address certain issues raised in *Mitek I*, namely, "whether Mitek could intervene in such actions and under what circumstances" and "whether intervention would provide Mitek adequate relief from the harms the Declaratory Judgment Act recognizes as [a] basis for such relief." Appellant's Br. 56–57 (quoting *Mitek I*, 34 F.4th at 1347). As an initial point, we did not strictly require the district court to resolve each issue. Rather, we stated that "more analysis of various issues" was required, offering those two (among two others) as examples, not an exhaustive mandate. *Mitek I*, 34 F.4th at 1347–48.

In any event, we disagree that these issues went unexplored. Regarding the first issue—"whether Mitek could intervene in such actions and under what circumstances"—Mitek itself conceded during the Rule 12(b)(1) motion hearing that it "could have permissibly asked to intervene" in

the Wells Fargo action but did not, claiming it realized that MiSnap "was so essential" to that case too close to trial. *Decision*, 2023 WL 2734372, at *27 (citation omitted). The district court rejected this argument, finding it contradicted by the record. For example, the district court noted that Mitek entered into a common interest agreement with Wells Fargo nearly 13 months before trial and that Mitek's corporate representative was deposed pursuant to that agreement. *Decision*, 2023 WL 2734372, at *27. Should a future lawsuit against a Mitek customer similarly allege that MiSnap meets certain patent claim limitations, Mitek will have the opportunity to file a motion to intervene—at a minimum, on a permissive basis. *See Decision*, 2023 WL 2734372, at *26 ("It is clear that Mitek has an interest in any lawsuit that accuses its customers of patent infringement based, even in part, on use of Mitek's product.").

Regarding the second issue—"whether intervention would provide Mitek adequate relief from the harms the Declaratory Judgment Act recognizes as a basis for such relief"—the district court expressly found that "[i]ntervention would provide an avenue for Mitek to obtain the determination it seeks: whether its unadulterated MiSnap software, without any customization by the end-user bank, infringes any element of any asserted claim." *Id.* Mitek further contends that the district court failed to address numerous disadvantages associated with intervention, such as being "bound by existing orders and deadlines" and "inordinate expenses." Appellant's Br. 57–58. But all cases, including the instant declaratory judgment action, have deadlines and costs. These concerns do not undermine the district court's conclusion that intervention remains the more effective avenue for Mitek to defend its software—particularly when weighed against the practical challenges of pursuing this declaratory judgment action.

"As a practical matter," the district court "s[aw] no path by which Mitek c[ould] litigate this case without extensive involvement by end-user banks, either through third-party

discovery or through joining additional parties." *Decision*, 2023 WL 2734372, at *27. Mitek represented to the district court that it licenses MiSnap to over 6,400 end-users. *Id.* at *25. In response, Mitek argues that it has all the necessary evidence "to show its own software does not infringe the [p]atents-in-[s]uit under any usage by its customers." Appellant's Br. 53. However, Mitek fails to appreciate key elements of indirect infringement that could not be proven (or disproven) without third-party involvement.

For example, "there can be no indirect infringement without direct infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920 (2014) (citation omitted). Therefore, an "investigation would still be required as to whether the end-user banks or third-party financial services providers are direct infringers." *Decision*, 2023 WL 2734372, at *27. Furthermore, induced infringement requires a finding that "the alleged infringer affirmatively induced that infringement with knowledge that the induced acts constituted patent infringement," *Amarin Pharma*, 104 F.4th at 1377, and contributory infringement similarly requires that alleged infringer "had 'knowledge of patent infringement,'" *Bio-Rad*, 998 F.3d at 1335 (citation omitted). Accordingly, "investigation" would be necessary to find what Mitek knew about *each* customer's activity and whether "Mitek directed or encouraged some or all elements of such infringement" for *each* customer. *Decision*, 2023 WL 2734372, at *27.

The district court also raised concerns about whether "any findings made as to Mitek alone would have any applicability or estoppel effect upon the end-users." *Id.* Mitek's complaint seeks not only a declaration of its own non-infringement but also that its "customers' use of Mitek's . . . technology has not and does not infringe" the patents-in-suit. J.A. 90 ¶ 37; *see also* J.A. 90–93. As the district court recognized, it is undisputed that "banks can, and indeed do, customize MiSnap to fit their own needs." *Decision*, 2023 WL 2734372, at *26. As a result, "a

determination of whether a component of Mitek's software, sold as-is, infringes the [patents-in-suit] will have no bearing and no estoppel effect on whether a modified version of the same component is infringing." *Id.* We have previously approved discretionary decisions to decline to exercise declaratory judgment jurisdiction where the action "would not afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *BP Chems.*, 4 F.3d at 981.

At bottom, even if the district court erred in concluding that it does not possess subject-matter jurisdiction over Mitek's declaratory judgment action—which we have determined it did not—we cannot say it abused its discretion in deciding that it would decline to exercise that jurisdiction.

## CONCLUSION

We have considered Mitek's remaining arguments but find them unpersuasive. For the foregoing reasons, we affirm the district court's dismissal of Mitek's declaratory judgment action.

**AFFIRMED**

## COSTS

Costs to Appellee.